IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GREEN MOUNTAIN GLASS, LLC AND
CULCHROME, LLC,

        Plaintiffs,

        v.

SAINT-GOBAIN CONTAINERS, INC. dba
VERALLIA NORTH AMERICA,

        Defendant.

Civil Action No. 14-cv-392-GMS

JURY TRIAL DEMANDED

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR
PREJUDGMENT INTEREST, ENHANCED DAMAGES, ATTORNEYS' FEES, AND
CONDITIONAL MOTION FOR A NEW TRIAL REGARDING ARDAGH'S
INFRINGEMENT OF U.S. PATENT NO. 6,230,521**

DATED: May 19, 2017

Justin A. Nelson (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email:  jnelson@susmangodfrey.com

Matthew R. Berry (admitted *pro hac vice*)
John E. Schiltz (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883
Email:  mberry@susmangodfrey.com
Email:  jschiltz@susmangodfrey.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
Telephone:  (302) 777-0300
Facsimile:  (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Robert S. Bramson (admitted *pro hac vice*)
BRAMSON & PRESSMAN
1100 East Hector Street, Suite 410
Conshohocken, PA 19428
Telephone:  (610) 260-4444
Facsimile:  (610) 260-4445
rbramson@b-p.com

**Attorneys for Green Mountain Glass LLC
and CulChrome LLC**

## TABLE OF CONTENTS

Page

I.   Introduction and Summary of Argument ............................................................1

II.  Green Mountain Is Entitled to an Award of Prejudgment Interest and Costs ....................4

III. Green Mountain Is Entitled to Treble Damages ..................................................5

   a.   The Jury's Willfulness Finding Alone Warrants Treble Damages ..........................6

   b.   The *Read* Factors Also Warrant Treble Damages ....................................7

      i. Factor 1: Ardagh deliberately copied Green Mountain's patented methods ................................................................7

      ii. Factor 2: Ardagh lacked a good faith belief that the '737 patent was invalid or not infringed ............................................................9

      iii. Factor 3: Ardagh's behavior as a party to this case warrants treble damages ....................................................................11

      iv. Factor 4: Ardagh's size and financial condition warrants treble damages ....................................................................13

      v. Factor 5: The question of Ardagh's willfulness was not even close ................13

      vi. Factor 6: The length of Ardagh's misconduct warrants treble damages ....................................................................14

      vii. Factor 7: Ardagh's failure to take remedial action warrants treble damages ....................................................................14

      viii. Factor 8: Ardagh's motivation to harm Green Mountain warrants treble damages ....................................................................15

      ix. Factor 9: Ardagh's attempt to conceal its misconduct warrants treble damages ....................................................................15

IV.  Green Mountain Is Entitled to its Reasonable Attorneys' Fees and Expenses ................16

   a.   Ardagh's Egregious, Bad Faith Infringement and Unreasonable Litigation Tactics Make This Case Exceptional Under 35 U.S.C. § 285 ..............16

      i. The jury's willfulness finding alone makes this case exceptional ....................17

      ii. Ardagh's exceptional litigation behavior also favors fee shifting ....................17

i

b.      Plaintiffs' Fees and Expenses Are Reasonable and Were Necessarily Incurred ................................................................................................................25

V.      Green Mountain Is Entitled to a New Trial Regarding Ardagh's Infringement of the '521 Patent If Ardagh Is Awarded Relief On Any Issue. ........................................27

VI.     Conclusion .........................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.*,
    198 F. Supp. 3d 1343 (S.D. Fla. 2016) .......................................................................... 15

*Barry v. Medtronic, Inc.*,
    2017 WL 1536492 (E.D. Tex. Apr. 20, 2017).............................................................. 12

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*,
    807 F.2d 964 (Fed. Cir. 1986).......................................................................................... 4

*Brytus v. Spang & Co.*,
    203 F.3d 238 (3d Cir. 2000)........................................................................................... 29

*Cent. Soya Co. v. Geo. A. Hormel & Co.*,
    723 F.2d 1573 (Fed. Cir. 1983).............................................................................. 19, 29

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)........................................................................................ 4

*Dominion Res. Inc. v. Alstom Grid, Inc.*,
    2016 WL 5674713 (E.D. Pa. Oct. 3, 2016)................................................................... 10

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
    697 F.3d 1342 (Fed. Cir. 2012)........................................................................................ 4

*Gen. Motors Corp. v. Devex Corp.*,
    461 U.S. 648 (1983)........................................................................................................... 4

*Gillette Co. v. S.C. Johnson & Son, Inc.*,
    1990 WL 36143 (D. Mass. 1990) .................................................................................. 20

*Grp. One, Ltd. v. Hallmark Cards, Inc.*,
    407 F.3d 1297 (Fed. Cir. 2005)...................................................................................... 20

*Hahnemann Univ. Hosp. v. All Shore, Inc.*,
    514 F.3d 300 (3d Cir. 2008)........................................................................................... 29

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016) ........................................................................................... passim

*IMX, Inc. v. LendingTree, LLC*,
    469 F. Supp. 2d 203 (D. Del. 2007)................................................................................. 5

*In re: Rembrandt Technologies Patent Litigation*,
    MDL No. 07-md-1848 (GMS)........................................................................................ 26

iii

*Johns Hopkins Univ. v. CellPro*,
    978 F. Supp. 184 (D. Del. 1997)...................................................................... 14

*Jurgens v. CBK, Ltd.*,
    80 F.3d 1566 (Fed. Cir. 1996)............................................................... 1, 8, 11

*Lab. Skin Care Inc. v. Ltd. Brands, Inc.*,
    No. CV 06-601-LPS (D. Del. Mar. 30, 2016)...................................................... 6

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
    811 F.3d 479 (Fed. Cir. 2016)........................................................................ 29

*Mars, Inc. v. Conlux USA Corp.*,
    818 F. Supp. 707 (D. Del. 1993)....................................................................... 5

*Medisim Ltd. v. BestMed, LLC*,
    758 F.3d 1352 (Fed. Cir. 2014)...................................................................... 31

*nCUBE Corp. v. SeaChange Int'l, Inc.*,
    313 F. Supp. 2d 361 (D. Del. 2004).......................................................... 16, 21

*NTP Inc. v. Research in Motion, Ltd.*,
    270 F. Supp. 2d 751 (E.D. Va. 2003) .............................................................. 16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014)................................................................................... 20

*OddzOn Prod., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997)................................................................... 3, 28

*Polara Eng'g v. Campbell Co.*,
    No. SA CV 13-00007-DFM, 2017 WL 754609 (C.D. Cal. Feb. 27, 2017)..................... 17

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992).......................................................... 7, 8, 15, 19

*Reger v. The Nemours Found., Inc.*,
    599 F.3d 285 (3d Cir. 2010)............................................................................. 6

*Scripps Clinic & Research Found., Inc. v. Baxter Travenol Labs., Inc.*,
    1990 WL 146385 (D. Del. July 31, 1990). .................................................. 19, 29

*Spegon v. The Catholic Bishop of Chicago*,
    175 F.3d 544 (7th Cir. 1999) ......................................................................... 30

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
    127 F.3d 1462 (Fed. Cir. 1997)................................................................. 10, 18

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
    96 F.3d 1409 (Fed. Cir. 1996) ........................................................................ 10

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
    592 F. Supp. 2d 727 (D. Del. 2009) ............................................................... 5

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
    939 F.2d 1540 (Fed. Cir. 1991) ...................................................................... 5

*Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*,
    No. CV 12-1285-RGA (D. Del. June 15, 2016) ............................................ 30

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016) ................................................................. 8, 10

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
    837 F.3d 1358 (Fed. Cir. 2016) ...................................................................... 11

**Statutes**

35 U.S.C. § 284 .......................................................................................................... 4, 5

35 U.S.C. § 285 ........................................................................................................ 17, 26

**Rules**

Fed. R. Civ. P 1 ............................................................................................................. 11

Fed. R. Civ. P 45(e)(2)(B) ............................................................................................ 25

Fed. R. Civ. P. 50 .......................................................................................................... 30

Fed. R. Civ. P. 54 ........................................................................................................... 5

**Other Authorities**

American Intellectual Property Law Association's 2015 Report of the Economic Survey ......... 27

On April 21, 2017, the jury returned a verdict in favor of Plaintiffs Green Mountain Glass and CulChrome (collectively, "Green Mountain"). The jury found Defendant Ardagh infringed all asserted claims of U.S. Patent No. 5,718,737, that Ardagh's infringement was willful, and that all claims were valid. The jury awarded Green Mountain $50,313,779.04. Based on the jury's willfulness finding, and other relevant factors, Green Mountain hereby respectfully requests the Court treble the jury's verdict, and award Green Mountain its reasonable attorneys' fees and expenses. Green Mountain also moves for an award of prejudgment interest and costs, and conditionally requests a new trial regarding Ardagh's infringement of U.S. Patent No. 6,230,521.

## I.  Introduction and Summary of Argument

"Upon a finding of willful infringement, a trial court should provide reasons for not increasing a damages award or for not finding a case exceptional for the purpose of awarding attorneys fees." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996). Here, under a heightened willfulness instruction based on *Halo*'s enhanced damages standard, the jury not only found that Ardagh willfully infringed, but that Ardagh had engaged in "the most egregious behavior" "especially worthy of punishment." This Court should treble the jury's verdict using either the rationale of *Halo* or the nine-factor test from *Read*.

If any case deserves treble damages and an award of reasonable attorneys' fees, it is this one. All relevant factors favor trebled damages and fee shifting. Awarding both is necessary to make Green Mountain whole, to punish Ardagh's "consciously wrongful" behavior, and to deter future acts of "wanton" infringement followed by exceptional litigation conduct. The Patent Act provides for both for these very circumstances.

The jury found Ardagh guilty of the precise sort of conduct that the Supreme Court said just last year has historically warranted enhanced damages. The evidence strongly suggests deliberate copying by Ardagh. Ardagh never formed a good faith belief that the '737 patent was

1

invalid or not infringed. In fact, Ardagh concedes that its conduct was neither informed nor guided by an informed opinion of counsel. Even after Ardagh employees admitted infringement in internal emails, Ardagh made no attempt to license, design around, or cease using Green Mountain's patented method. It instead sent Green Mountain a putatively false letter denying and concealing that infringement. Nor did Ardagh make any changes to the accused methods after this suit was filed. It instead chose to continue its willful infringement, just as it had for the previous six years. Ardagh apparently thought it was above the law given its size and wealth advantages over Green Mountain. But exploiting both to profit off the methods found to willfully infringe the '737 patent renders trebled damages particularly warranted here.

Confronted with a very weak litigation position—but wanting "to teach Green Mountain a lesson"—Ardagh then litigated this case in an exceptional and unreasonable manner that stands out, even from other vigorously litigated patent cases. Or at the very least ***should*** stand out.

Preoccupied with sending Green Mountain threatening letters demanding immediate dismissal with fees and expenses, Ardagh failed to issue a litigation hold until six months after this case was filed. In the meantime, all pre-suit emails on its email server were lost or destroyed, and were thus unable to be searched and produced to Green Mountain. Ardagh then waited until the eleventh hour to file petitions for *inter partes* review, which the PTAB summarily rejected as having no reasonable likelihood of success. All the while, Ardagh improperly withheld core technical documents, which should have been produced years before pursuant to Paragraph 4(b).

Despite "consciously" infringing Green Mountain's patent in "bad faith," Ardagh used this litigation to mislead and frustrate Green Mountain and to mount baseless arguments and defenses in an attempt to avoid liability. For example, as part of its Paragraph 4(b) disclosures, Ardagh submitted the Katie Flight declaration specifically denying that it purchased or used

"mixed color cullet"; but when the supposed declarant was deposed, she admitted that she did not write the declaration attributed to her, and stated that she could not sign it subject to the penalty of perjury with the paragraphs denying Ardagh's use of mixed color cullet.

Even Ardagh's lead counsel called Ms. Flight's deposition "terrible" during closing arguments. Tr. at 1325:16. Ardagh no doubt was represented by an experienced and highly-skilled lead counsel at trial. But lead counsel entered an appearance only weeks before trial and was not counsel of record during the vast majority of this case. And Ms. Flight's deposition did not stand alone. Indeed, the jury saw witness after witness who took Ardagh's "know-nothing" strategy. Although Ardagh's lead counsel called this behavior terrible too, it was lead counsel's own law firm that represented, prepared, and defended these witnesses—often paying for their testimony as well.

Moreover, after requiring Green Mountain to respond to more than *twenty* affirmative defenses and more than *sixty* invalidity references over the course of this case, at trial, Ardagh's almost exclusive focus was on a defense it had explicitly abandoned in the pre-trial order. That eleventh-hour prior use defense was factually and legally erroneous for multiple reasons, including that it was based on highly-confidential, trade secret documents, thereby violating the fundamental tenet that "prior, but non-public, inventors yield to later inventors who utilize the patent system." *OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1402 (Fed. Cir. 1997). And Ardagh's attempt to escape the secret nature of the document was to rely on uncorroborated testimony from its fact witness that internal cullet could never exceed 10% when that assertion was flatly false based on Ardagh's own records. Finally, while Ardagh tried to blame its eve-of-trial about-face on this Court's rejecting its baseless claim construction position, Ardagh had previously operated under Green Mountain's constructions for *every other reference in the case*.

3

The jury rejected Ardagh's egregious conduct for what it was: "bad faith" and "consciously wrongful." When that finding is coupled with the other relevant factors, Ardagh's exceptional behavior warrants that Ardagh pay both treble damages and Green Mountain's attorneys' fees and expenses, along with a standard award of prejudgment interest at the typical prime rate compounded quarterly.

## II.  Green Mountain Is Entitled to an Award of Prejudgment Interest and Costs

Upon a finding of infringement, "the court shall award the claimant damages . . . together with interest and costs as fixed by the court." 35 U.S.C. § 284. "The award of pre-judgment interest is 'the rule, not the exception.'" *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012). It "merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of infringement and the date of the judgment." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656 (1983). Prejudgment interest is due from the date of infringement to the date of final judgment. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1263 (Fed. Cir. 2014).

Green Mountain requests prejudgment interest at the prime rate, compounded quarterly. The rate of prejudgment interest and the frequency of compounding are left to the discretion of the district court. *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986). "In exercising that discretion, however, the district court must be guided by the purpose of prejudgment interest, which is to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." *Id.* (quotation omitted). Green Mountain's damages expert, Michael Lasinski, has concluded that use of the prime rate compounded quarterly is a conservative measure that best serves the goal of putting Green Mountain in as good a position as it would have been in had Ardagh entered into a

4

reasonable royalty agreement, rather than willfully infringed its patent rights.[1]

Awarding prejudgment interest at the prime rate compounded quarterly is consistent with this Court's past practice, *see, e.g.*, *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 592 F. Supp. 2d 727, 749 (D. Del. 2009), and with the sound practice of other courts within this District and across the country. "Courts have recognized that the prime rate best compensates a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is 'a better measure of the harm suffered as a result of the loss of the use of money over time.'" *IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 227 (D. Del. 2007) (citing *Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 720–21 (D. Del. 1993), *aff'd*, 16 F.3d 421 (Fed. Cir. 1993)); *accord, e.g.*, *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (affirming prejudgment interest at the prime rate, compounded daily).[2]

Using the prime rate compounded quarter adds $10,347,899.18 to the verdict through June 30, 2017, and a daily rate of $6,479.00 from July 1 through September 30, 2017. *See* Ex. 1.

## III.   Green Mountain Is Entitled to Treble Damages

The Patent Act gives district courts the discretion to award treble damages against those guilty of patent infringement. 35 U.S.C. § 284. Indeed, "[e]nhanced damages are as old as U.S. patent law." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1928 (2016). "Consistent

---

[1] The Declaration of Michael J. Lasinski is attached to this Brief as Exhibit 1 to the Declaration of John E. Schiltz filed contemporaneously herewith. Unless otherwise noted, all references to "Ex." herein refer to Exhibits attached to the Schiltz Declaration.

[2] As the prevailing party, Green Mountain also seeks its costs pursuant to Federal Rule of Civil Procedure 54 and 35 U.S.C. § 284. In the Third Circuit, "there is a 'strong presumption' that costs are to be awarded to the prevailing party." *Reger v. The Nemours Found., Inc.*, 599 F.3d 285, 288 (3d Cir. 2010). "A consequence of the strong presumption that the prevailing party should be awarded its costs that are shown to be within the narrow statutory categories of taxable costs is that 'the assessment of costs most often is merely a clerical matter that can be done by the court clerk.'" *Lab. Skin Care Inc. v. Ltd. Brands, Inc.*, No. CV 06-601-LPS, 2016 WL 1266564, at *2 (D. Del. Mar. 30, 2016). In accordance with Local Rule 54.1, Green Mountain will file a bill of costs "within 14 days after the time for appeal has expired or within 14 days after the issuance of the mandate of the appellate court."

with nearly two centuries of enhanced damages under patent law, however, such punishment should generally be reserved for egregious cases typified by willful misconduct." *Id.* at 1934. That is, the exact type of culpable conduct the jury found Ardagh guilty of here.

### a.     The Jury's Willfulness Finding Alone Warrants Treble Damages

This was not a garden-variety infringement case, as shown by what the jury actually found under the willfulness instruction. The Court adopted the heightened willfulness instruction proposed by Ardagh, which incorporated the *Halo* standard for enhanced damages. *See* Ex. 2. The jury thus found "Ardagh was especially worthy of punishment." *Compare* Tr. at 1250, *with Halo*, 136 S. Ct. at 1932 (enhanced damages are "designed a 'punitive' or 'vindictive' sanction for egregious behavior"). The jury found willful infringement after being instructed that "willful infringement is reserved only for the most egregious behavior." *Compare* Tr. at 1251, *with Halo*, 136 S. Ct. at 1933 (enhanced damages "should generally be reserved for egregious cases typified by willful misconduct"). The jury found willful infringement after being instructed that it is typified by infringement that is "wanton, malicious, consciously wrongful, or done in bad faith." *Compare* Tr. at 1251, *with Halo*, 136 S. Ct. at 1932 ("The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.").

The jury's finding that Ardagh engaged in the "most egregious," "willful," "wanton," "malicious," "consciously wrongful," or "bad faith" behavior "especially worthy of punishment" alone warrants an award of treble damages. In *Halo*, the Supreme Court stressed that its "precedents make clear that 'bad-faith infringement' *is* an independent basis for enhancing patent damages." 136 S. Ct. at n.* (emphasis in original)). And post-*Halo*, the Federal Circuit has reaffirmed that "[w]illfulness of behavior is a class jury question of intent," and that "an infringer's subjective bad faith alone may support an award of enhanced damages." *WBIP, LLC*

*v. Kohler Co.*, 829 F.3d 1317, 1340-41 (Fed. Cir. 2016) (quotations omitted).

      **b.**      **The *Read* Factors Also Warrant Treble Damages**

"Upon a finding of willful infringement, a trial court should provide reasons for ***not***

increasing a damages award." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996)

(emphasis added). While "Section 284 permits district courts to exercise their discretion in a

manner free from inelastic constraints," *Halo*, 136 S. Ct. at 1933-34, courts have generally relied

on the factors identified in *Read Corp. v. Portec, Inc.* to help guide that discretion. *See, e.g.*,

*WBIP*, 829 F.3d at 1342 (affirming enhanced damages post-*Halo* based on analysis of *Read*

factors). In *Read*, the Federal Circuit identified nine factors to assist the trial court "in

determining whether to exercise its discretion to award enhanced damages and how much the

damages should be increased." Read Corp. v. Portec, 970 F.2d 816, 827-28 (Fed. Cir. 1992)

Here, the jury found willfulness only after considering all of the facts, including whether

Ardagh "acted consistently with the standards of behavior for its industry"; "intentionally copied

a method that is covered by the Patents-in-Suit"; "reasonably believed that it did not infringe or

that the patent was invalid"; "attempted to cease infringing activity or design around the Patents-

in-Suit"; or "tried to cover up its infringement." *Compare* Tr. at 1251, *with Read* 970 F.2d 816,

at 826-27 (adopting nine-factor enhancement test, including whether infringer "deliberately

copied," "formed a good-faith belief that [patent] was invalid or that it was not infringed," took

"[r]emedial action," or "[a]ttempted to conceal its misconduct."). All nine *Read* factors support

awarding treble damages against Ardagh.

      i. <u>Factor 1: Ardagh deliberately copied Green Mountain's patented methods</u>

The jury took Ardagh's deliberate copying into account in finding that Ardagh "acted

willfully" and was "especially worthy of punishment." The evidence of Ardagh's deliberate

copying was overwhelming. In July 1995, four months after Green Mountain filed its patent

application, Green Mountain discussed that patent-pending technology with Ardagh's then Senior Vice President of Technical Services, Roger Erb. *See* JTX-5. At the close of the meeting, Erb remarked that if Green Mountain "could take 50% Green Glass and 50% Amber Glass and successfully make Amber Glass that this would impress [him]!" *Id.*

A mere eight days after learning about the '737 methods, Ardagh drafted an internal, attorneys' eyes only document entitled "Additional Information Requirements for EFTEK." PX-25. This smoking gun document reveals Ardagh's secret efforts to copy Green Mountain's technology and pass it off as its own. *See id.* Therein, Ardagh outlined its plan to seek additional information regarding nineteen different aspects of Green Mountain's technology, including most notably, the "[c]hemical composition of cullets used," and "the composition of the virgin batch." *Id.* That is, the exact information encompassing the inventive steps of claims 1, 18, 20, 21, 22, and 24 of the '737 patent– each of which the jury found Ardagh willfully infringed. *See, e.g.*, JTX-1, claim 18. At trial, the jury heard testimony and saw evidence in which Marv Gridley, Ardagh's then Director of Glass Technology, confirmed that Ardagh had only used "copper oxide since *1996* to allow increased use of green cullet in amber," Tr. at 796:7-11 (emphasis added). In fact, Gridley all but admitted Ardagh's deliberate copying in a 2003 email, stating bluntly, "we would not seek to license any color control technology ('CulChrome', which uses copper oxide to mask high levels of green cullet) because we are already doing it." PX-134. As the jury heard, Ardagh was "doing it" only after it learned of the '737 patent and copied it.

Although the evidence of Ardagh's copying is compelling, the Federal Circuit has stressed that there is no requirement "that the fact finder must find 'slavish copying' in order to conclude that the infringer copied the patentee's invention." *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996). Nor is "blatant" or "smoking gun"

copying required, as courts have stressed that circumstantial evidence of copying, and even a showing that the infringer was "reckless as to whether it copied," weighs in favor of enhanced damages. *See, e.g.*, *WBIP, LLC v. Kohler Co.*, No. CIV.A. 11-10374-NMG, 2014 WL 585854, at *7 (D. Mass. Feb. 12, 2014), *aff'd* 829 F.3d 1317 (Fed. Cir. 2016); *Dominion Res. Inc. v. Alstom Grid, Inc.*, No. CV 15-224, 2016 WL 5674713, at *21 (E.D. Pa. Oct. 3, 2016) (copying factor favored enhancement where infringer "had the means and opportunity to copy" and "'was at least reckless'"). Here, the evidence confirms not only recklessness, but also deliberate copying.

ii. <u>Factor 2: Ardagh lacked a good faith belief that the '737 patent was invalid or not infringed</u>

It has long been settled that "[p]rudent behavior generally requires that competent legal advice was obtained before the commencement of the infringing activity." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1468 (Fed. Cir. 1997). And yet, despite knowing about the '737 patent since at least July 1995, and then having more than thirteen years of in-person discussions with Green Mountain regarding the scope and benefits of that technology, Ardagh **never** undertook **any** investigation to form a good-faith belief that the '737 patent was invalid or not infringed. Such "wanton" and "consciously wrongful" infringement—and abject disregard for the rule of law and property rights—strongly warrants an award of treble damages.

In fact, because the jury already weighed such evidence, this Court need not, indeed cannot, reweigh that evidence here. *See Jurgens*, 80 F.3d at 1572. The willfulness instruction specifically required the jury to find that Ardagh engaged in "egregious behavior" such as "bad faith" infringement, Ex. 2, even though such behavior is not necessary for finding willful infringement. *See WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) ("*Halo* emphasized that subjective willfulness alone—*i.e.*, proof that the defendant acted despite a risk of infringement that was either known or so obvious that it should have been known to the accused infringer—can support an award of enhanced damages" (internal

9

quotations and citations omitted)). In returning its willfulness verdict and finding Ardagh was "especially worthy of punishment," the jury necessarily found Ardagh engaged in "the most egregious behavior" "where the infringement is wanton, malicious, consciously wrongful, or done in bad faith." Ex. 2. The jury also necessarily rejected that Ardagh "reasonably believed that it did not infringe or that the patent was invalid." *Id.* The Federal Circuit has held courts "do not have discretion to reweigh evidence" regarding Factor 2 where, like here, the jury rejected an infringer's "assertion that it acted in good faith as a matter of fact." *Jurgens*, 80 F.3d at 1572.

Even without the jury instruction, the evidence of Ardagh's imprudent, bad faith conduct is overwhelming. Ardagh admitted in its interrogatory answers that "Ardagh does not intend to rely upon any oral or written advice of counsel regarding infringement, invalidity, or enforceability of the Patents-in-Suit." Ex. 3. This alone supports enhanced damages. *Accord, e.g.*, *Barry v. Medtronic, Inc.*, No. 1:14-CV-104, 2017 WL 1536492, at *5 (E.D. Tex. Apr. 20, 2017) (failure to provide opinion of counsel supported treble damages).

Moreover, when asked at trial, "What work did Ardagh do to analyze whether to take a license to the patents in suit when it met with Green Mountain, the plaintiffs, prior to this litigation arising," Ardagh's corporate represented blithely responded, "I don't know." Tr. at 593:11-15. Likewise, when Steven Rhea was deposed just one week earlier, he testified that he was "never" "concerned that Ardagh was infringing the Green Mountain Patents," despite admitting that, "I can't recall any degree ever reading it," and that he was not "aware of any analysis that Ardagh did internally to determine whether or not it was using the technology from CulChrome." Ex. 4 (Rhea Dep. at 26:5-9; 34:11-21; 43:24-44:4). Such blind faith and willful ignorance precisely evidences the "wanton" infringer that the jury found and the Supreme Court said warranted enhanced damages in *Halo*.

Finally, although Ardagh's lawyers concocted post-Complaint non-infringement and invalidity defenses, which the jury correctly rejected, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct," *Halo*, 136 S. Ct. at 1933. Here, the evidence demonstrates that, prior to Green Mountain filing suit, Ardagh never formed a good faith belief that the '737 patent was invalid or not infringed. *See, e.g.*, Tr. at 231:3-10 (Dr. Lehman testifying that in the more than a decade that he met with Ardagh, they never told him that Green Mountain's patents were invalid, and never sent him any prior art that they thought might invalidate the patents); *Id.* at 375:9-16; 376:9-19 (Ardagh's corporate representative testifying Ardagh never claimed "to plaintiffs during the negotiation of this confidentiality agreement that the patents-in-suit were invalid" or "that it was already practicing the inventions"). Ardagh's failure to investigate the scope of the '737 patent and form a good faith belief that it was invalid or not infringed strongly favors treble damages.

    iii. <u>Factor 3: Ardagh's behavior as a party to this case warrants treble damages</u>

Ardagh litigated this case in a manner designed to obstruct, rather than secure, "the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P 1. Ardagh set out on a no-holds-barred course to intimidate, delay, obfuscate, mislead, hide the ball, run up the tab, and above all else, prevent Green Mountain from recovering relief to which it was lawfully entitled.

One telling example of that strategy was Ardagh's submission of a false, later-disclaimed declaration. As part of its Paragraph 4(b) disclosures, Ardagh's former counsel submitted a declaration signed by Katie Flight, Ardagh's Manager of Cullet Procurement and Raw Materials. PX-111. Among other false statements, it asserted that "Ardagh does <u>not</u> use 'mixed color cullet (as that term is described in U.S. Patent Nos. 5,718,737 and 6,230,521) to make recycled glass products"; "Ardagh does <u>not</u> purchase 'mixed color cullet' (as that term is described in U.S. Patent Nos. 5,718,737 and 6,230,521) from its suppliers"; and that "<u>no</u> glass manufacturers use

11

'mixed color cullet' (as that term is described in U.S. Patent Nos. 5,718,737 and 6,230,521) for the manufacture of recycled glass products." *Id.* at ¶¶ 9-11 (emphases in original). Ardagh argued the exact opposite of each of these "facts" at trial.

Moreover, when Ms. Flight was deposed, she stated that she did not write the declaration attributed to her, Ex. 5 (Flight Dep. at 223:14-24); confirmed that she "would not be able to testify as to what 'mixed color cullet' means, as that term is described in these two patents," *id.* at 263:13-23; conceded that she could not "sign this declaration with paragraph 9 and 10 in it, under oath, subject to the penalty of perjury, that references 'mixed color cullet,' as that term is used in these two patents," *id.* at 264:10-16; and flatly admitted, "***If I were to sign a declaration today, it would say something completely different than what this declaration said***," *id.* at 234:19-21 (emphasis added). When asked if she was pressured by a lawyer to sign the admittedly false declaration, Ardagh's counsel objected on (dubious) privilege grounds, and instructed her not to answer the question. *Id.* at 280:19-281:4. Ms. Flight later claimed that she did not remember whether she was pressured to sign it. *Id.* at 281:23-282:1.

In his closing argument, Ardagh's lead counsel himself conceded that Ms. Flight's testimony was "terrible," but then falsely told the jury, "[t]hat testimony does not have anything to do with any issue you have to decide in this case." Tr. at 1325:16-23. Even worse, he failed to tell the jury that it was ***his*** law firm that represented Ms. Flight at her deposition—indeed, two members of his trial team spent an entire day preparing her for that deposition—and that Ardagh paid her legal fees and used her as a consultant on this case Ex. 5. (Flight Dep. at 69:21-70:11; 177:14-20). Such bad faith litigation conduct plainly warrants treble damages. *Johns Hopkins Univ. v. CellPro*, 978 F. Supp. 184, 195 (D. Del. 1997) (trebling damages where infringer "deliberately infringed the patents in bad faith and has used this litigation to frustrate plaintiffs

12

and as an opportunity to throw up baseless arguments and defenses to avoid liability").

Other examples of Ardagh's exceptional litigation conduct—such as its failing to preserve documents; preparing know-nothing deponents; failing to cease use of Green Mountain's snapped-back, privileged materials; changing defenses literally on the eve of trial, resulting in a trial by ambush; and attempting to pass off its paid consulting expert as a fact witness at trial—are discussed below in connection with Green Mountain's entitlement to reasonable attorneys' fees and expenses. *See infra* §III.a.

### iv. Factor 4: Ardagh's size and financial condition warrants treble damages

"Where, as here, [Ardagh] is a multi-billion dollar enterprise and the market leader—due in significant part to sales of products found to willfully infringe [Green Mountain's] patent[]— enhancement of damages is particularly warranted." *Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.*, 198 F. Supp. 3d 1343, 1352 (S.D. Fla. 2016). Ardagh is valued at over $5.4 billion, is the second-largest supplier of glass packaging in North America, and had annual earnings before interest, taxes, depreciation, and amortization of nearly $1.3 billion. *See* Ex. 6

While Ardagh can undoubtedly withstand treble damages, it is also notable that it exploited its size and wealth over Green Mountain in refusing to license or cease use of the '737 patent. *See Read*, 970 F.2d at 827 ("Double damages appropriate. If defendant were the giant and plaintiff the small independent, I would make it treble." (quotation, citation, and brackets omitted)). *NTP Inc. v. Research in Motion, Ltd.*, 270 F. Supp. 2d 751, 758 (E.D. Va. 2003) (enhancing damages: "RIM repeatedly acknowledged throughout its pleadings and its closing argument, NTP is a very small corporation, while RIM, in comparison, is a much larger entity").

### v. Factor 5: The question of Ardagh's willfulness was not even close

The question of whether Ardagh willfully infringed the '737 patent was not close. *Cf. Read*, 970 F.2d at 827 ("Because the court still considers the willfulness question to be a close

one … double, and not treble damages are appropriate."). After receiving a heightened willfulness instruction at Ardagh's urging, the jury found Ardagh "was especially worthy of punishment" and necessarily engaged in infringement that was "wanton, malicious, consciously wrongful, or done in bad faith." Substantial—indeed overwhelming—evidence supports the jury's finding. Nor did Ardagh's infringement, or the validity of the '737 patent, present a close question: the jury determined that all of the accused methods infringed all asserted claims of the '737 patent, Ardagh did not mention a single prior art reference in its opening or closing arguments, and Ardagh cannot prove that any alleged prior use was both "public" and not "abandoned, suppressed, or concealed" as a matter of law. *Accord nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 390 (D. Del. 2004) (awarding treble damages: "the Court finds that the case for literal infringement was not a close one where the jury found literal infringement on each of the asserted claims of the '804 Patent"), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006).

### vi. Factor 6: The length of Ardagh's misconduct warrants treble damages

Green Mountain presented evidence at trial that Ardagh willfully infringed the '737 patent from March 2008 to March 2015, when the '737 patent expired. *See, e.g.*, Tr. at 353:14-16. For its part, Ardagh actually took the position that "first infringement" occurred "when the '737 patent was issued" in "roughly the middle of 1998." *Id.* at 1173:9-21. Whether Ardagh willfully infringed for seven years or ***seventeen years***, the length of Ardagh's wanton misconduct strongly favors treble damages. *Accord, e.g.*, *Polara Eng'g, Inc. v. Campbell Co.*, No. SA CV 13-00007-DFM, 2017 WL 754609, at *26 (C.D. Cal. Feb. 27, 2017) (two and a half times damages where "infringement began more than six years ago).

### vii. Factor 7: Ardagh's failure to take remedial action warrants treble damages

The jury considered Ardagh's failure to take remedial action in finding that Ardagh "was especially worthy of punishment." Despite knowing for years that it was infringing the '737

14

patent, *see, e.g.*, PX-134 (in 2003, "we would not seek to license any color control technology

('CulChrome' . . . because we are already doing it"), Ardagh never ceased using that technology,

refused to take a license to it, and chose not to design around it or practice a non-infringing

alternative. Ardagh's infringement only ceased because the '737 patent expired. *Cf. Arctic Cat*,

198 F. Supp. at 1353 (trebling damages where infringer "did not voluntarily cease making or

selling the infringing products at any point or take steps to implement a non-infringing

alternative."). Ardagh's failure to take remedial action is especially troubling because Ardagh

was given multiple chances to take a license, and Ardagh elsewhere took the position that it

would have been an easy switch not to infringe the '737 patent. *See* Ex. 7.

    viii.  <u>Factor 8: Ardagh's motivation to harm Green Mountain warrants treble damages</u>

While a defendant's motivation for infringement may weigh against fully trebling

damages where the defendant was influenced by such economic pressures as customer

satisfaction, *see Read*, 970 F.2d at 827, Ardagh's damages expert took the position that "no

Ardagh customers or end users have indicated they would pay more for glass containers simply

due to the presence of recycled glass within the containers, much less one with the accused

unsorted mixed color cullet," and that there was no evidence that "any such success or popularity

is based on the allegedly infringing manufacturing process" Exhibit 8 at ¶ 82.

    ix.  <u>Factor 9: Ardagh's attempt to conceal its misconduct warrants treble damages</u>

Ardagh's attempt to conceal its blatant infringement, both before and during litigation,

strongly favors treble damages. In fact, the jury explicitly considered this factor in finding

Ardagh was "especially worthy of punishment." In 2005, Ardagh's lawyer sent Green Mountain

"a letter and said we want to make it clear that we are not going to be using any of the

methodology in the claims in the CulChrome patents." Tr. at 325:21-326:22; DX-281. We know

now that was completely false, but Green Mountain's president testified that he believed the

denial—because it came from a lawyer—and further that the denial played a part in Green

Mountain not seeking redress earlier. Tr. at 325:21-326:22. More generally, the jury heard

evidence that the parties discussed the '737 patent for no less than thirteen years, often at

Ardagh's behest, and often at Ardagh's headquarters. *See, e.g.*, *id.* at 330:1-14. And Ardagh was

apparently, but secretly, infringing the '737 patent the entire time. Such "delays, silences,

misinformation, non-responses, and various other means of 'putting [Green Mountain] off as

long as possible'" support treble damages. *SRI*, 127 F.3d at 1468. Indeed, as discussed below,

Ardagh's attempts to conceal its infringement became even more egregious post-Complaint.

*       *       *

Following a five-day trial, the jury determined that Ardagh willfully infringed all of the

asserted claims of the '737 patent, and that Ardagh's "most egregious behavior" was "especially

worthy of punishment." Although enhanced damages should not be meted out in a garden-variety

case, this case was anything but typical. Indeed, all nine *Read* factors support the jury's finding

and favor punishing Ardagh's "consciously wrongful," "bad faith" infringement with an award

of treble damages. This Court should treble the jury's verdict.

## IV.   Green Mountain Is Entitled to its Reasonable Attorneys' Fees and Expenses

### a.   Ardagh's Egregious, Bad Faith Infringement and Unreasonable Litigation Tactics Make This Case Exceptional Under 35 U.S.C. § 285

The Patent Act provides that courts "in exceptional cases may award reasonable attorney

fees to the prevailing party." 35 U.S.C. 285. "The purpose of § 285 is, in a proper case and in the

discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the

prosecution or defense of the suit." *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573,

1578 (Fed. Cir. 1983). "In other words, the purpose of the award is to compensate the prevailing

party for costs it would not have incurred but for the conduct of the losing party." *Scripps Clinic

& Research Found., Inc. v. Baxter Travenol Labs., Inc.*, 1990 WL 146385, at *1 (D. Del. July

16

31, 1990). In *Octane Fitness*, the Supreme Court held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Trial courts are to "determine whether a case is 'exceptional' in the case-by-case exercise of their discretion considering the totality of the circumstances." *Id.*

i. The jury's willfulness finding alone makes this case exceptional

Although there is no precise rule or formula for making these determinations, "[a]n express finding of willful infringement is a sufficient basis for classifying a case as 'exceptional,' and indeed, when a trial court denies attorney fees in spite of a finding of willful infringement, the court must explain why the case is ***not*** 'exceptional' within the meaning of the statute." *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1308 (Fed. Cir. 2005) (emphasis added)

The jury's willfulness finding under a heightened standard makes this case stand out from others, and requires that Ardagh compensate Green Mountain for the fees and expenses it was forced to incur merely to receive the compensation it was lawfully entitled to. Where, like here, "an infringer does not act 'prudently' and 'reasonably' before engaging in infringing action, it is only 'fair' to allocate to the infringer the costs which the patent holder has to incur in order to seek redress." *Gillette Co. v. S.C. Johnson & Son, Inc.*, 1990 WL 36143, 15 U.S.P.Q. 2D (BNA) 1795, 1799 (D. Mass. 1990), *aff'd*, 919 F.2d 720 (Fed. Cir. 1990); *accord, e.g.*, *nCUBE Corp.*, 313 F. Supp. 2d at 391–92 (awarding fees based on "jury's finding of willfulness and the factors discussed in the context of the Court's enhanced damages determination," including the "failure to investigate the patent and/or rely on the informed opinions of competent counsel before engaging in and/or continuing its infringing activity"), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006).

ii. Ardagh's exceptional litigation behavior also favors fee shifting

17

The unreasonable manner in which Ardagh litigated this case also favors fee-shifting. Ardagh engaged in a litigation strategy designed to intimidate, delay, mislead, conceal, and drive up litigation expenses, which it was in a much better position to absorb than Green Mountain. Non-limiting examples of Ardagh's exceptional litigation conduct include:

**Failure to preserve documents.** Even though this suit was filed on March 28, 2014, Ardagh failed to issue a document preservation notice until six months later on September 23, 2014. Ex. 10. Not only was that far too late, but the preservation notice was also only sent to eight individuals in a company with more than 5,500 employees. *See id.* It was not sent to any of the plants where infringement occurred, to all of the individuals on Ardagh's Rule 26 disclosures (much less to all of the employees that had contacts with Green Mountain over the years), or to the IT employees in charge of administering Ardagh's email and document servers. In fact, half of Ardagh's trial witnesses never received it. Ardagh admitted in its sworn interrogatory answers that this reckless disregard resulted in the destruction, or inability to locate and produce, ***any*** pre-suit emails that were stored on Ardagh's "electronic mail servers but not saved locally." *Id*. After this suit was filed, Ardagh acquired the originally-named defendant, Saint Gobain Containers. Thereafter, Ardagh took the position that "ESI from the pre-merger electronic mail servers is not within Ardagh's possession, custody, or control," *id.*, and thus, could not be produced. And even though the pre-suit emails became missing on July 23, 2014 when Saint-Gobain "shut down mail server access," Ex. 11 (Root Dep. at 149:10-14), Ardagh did not disclose the problem until February 20, 2015. In between, Ardagh served its Second Amended Initial Disclosures and falsely stated, "Ardagh is not currently aware of any ESI not reasonably accessible." Ex. 12.

**Know-nothing corporate representatives and deponents**. Ardagh's bad faith litigation conduct also extended to its preparation and presentation of deponents, who definitely stand out

18

for their collective obfuscation and feigned lack of knowledge. Here again, Ardagh's lead counsel told the jury, "They were terrible witnesses." Tr. at 1325:18. When asked about mixed color cullet—the key raw material at issue in this case—Ardagh's Vice President of Procurement, Peter Walters, testified, "I don't know that term," Tr. at 677:10; Ardagh's Manager of Glass Technology, Heidi Root, testified, "I don't know what that is,"[3] *id.* at 592:23; and Ardagh's Manager of Cullet Procurement, Katie Flight, testified, "I'm not familiar with the term mixed color cullet," *id.* at 293:6-7. Ms. Flight—the person in charge of purchasing cullet at Ardagh—even testified that she did not know whether it was "factually true to say that cullet is broken glass." *Id.* In her sixteen minute clip played at trial, Ms. Flight answered a question with "I don't recall," "I don't know," or "I don't remember" no less than ***forty-seven times***. *Id.* at 285:2-302:5. Unfortunately, Ms. Flight's obstruction was not an isolated incident. *See, e.g.*, Tr. at 678:11-14 (Walters: "I'm not saying yes or I'm not saying no to this. I'm not saying it's not true. I'm not saying it is true. I'm not backing away from it, and I'm not giving this presentation again."). Ardagh's exceptional deposition conduct extended beyond preparing obtuse witnesses too. For example, Ardagh failed to give Green Mountain notice of a deposition of a key defense witness; deposed that witness without Green Mountain being present; and then tried to play that deposition at trial despite Green Mountain's lack of notice or attendance. *See id.* at 751:14-22.

**Dilatory, bad faith production of documents**. Paragraph 4(b) of the Default Standard of Discovery requires a defendant to produce, within 30 days after the Rule 16 Conference, "the core technical documents related to the accused products(s)." As discussed above, Ardagh took

---

[3] Despite testifying at her deposition that did not know what mixed color cullet is—and going so far as to claim that she had never "heard a cullet referred to as mixed color cullet" in her sixteen years at Ardagh, Tr. at 590:22-591:9—at trial, Ms. Root dubiously became Ardagh's star witness for its meritless prior use defense, and in particular for proving that its 1994 batch record allegedly contained, "mixed color cullet." *Id.* at 1156:16-19.

this opportunity to intimidate and mislead Green Mountain by serving a false, attorney-crafted declaration denying Ardagh's use of mixed color cullet. What Ardagh should have produced, but failed to produce, was ***any*** of its batch history files, which were ***the*** core Ardagh documents relevant to this case because, as the parties agreed at trial, they documented which raw materials were used in the accused methods on a daily basis, including the cullet, colorizers, and/or decolorizers added to the infringing batches. *See, e.g.*, Tr. at 365:2-366:19; *id.* at 886:19-25; *id.* at 945:10-13. Rather than produce such documents within 30 days of the Rule 16 conference, on September 17, 2014, Ardagh deliberately withheld these highly-relevant and incriminatory files until ***April 2, 2016***—after early settlement talks, after the stay pending resolution of the IPRs, and less than four months before the close of discovery. *See* Schiltz Decl. at ¶ 2.

**Intimidation**. Shortly after this suit was filed, Ardagh's prior counsel sent Green Mountain a letter stating, "[w]hen we are victorious in this action, we will similarly seek all attorneys' fees and costs . . . Dismiss this action with prejudice immediately and issue a check made payable to my client in the full amount of our total fees and costs." Ex. 9. This baseless and exceptional threat served no purpose other than to intimate Green Mountain in hopes of keeping Ardagh's bad faith infringement from the jury.

**Frivolous claim construction positions.** The unreasonable manner in which Ardagh litigated this case is also demonstrated by its frivolous claim construction positions. Ardagh originally stipulated that "mixed colored cullet" and "unsorted mixed colored cullet" meant the same thing. D.I. 58. But even though the patent defines "mixed colored glass cullet" as "broken pieces of glass of mixed colors and types," JTX-1 at 1:14-16, Ardagh confusingly asserted, without any support, that "mixed color cullet" instead meant "post-consumer broken pieces of glass of mixed colors that have never been sorted by color," D.I. 58, or "broken pieces of glass of

mixed colors that have not been sorted to remove undesired colors." D.I. 145. The Court rejected

Ardagh's patent attempt to construct its way around infringement, adopted Green Mountain's

constructions, and noted that "[c]onstruction of these terms is straightforward."  D.I. 151.

In response to the Court also construing "unsorted" to have its plain and ordinary

meaning, *see id.*, Ardagh then went back on its prior agreement that "mixed color cullet" and

"unsorted mixed color cullet" meant the same thing, and spent the next year attempting to

backdoor its failed constructions of "mixed color cullet" into the term "unsorted," under the

guise of plain and ordinary meaning. *See* D.I. 221. Ardagh's blatant disregard for the patent's

claims, specification, and prosecution history, and refusal to take "no" for an answer, required

Green Mountain to seek further relief from this Court. Following additional briefing, the Court

once again agreed with Green Mountain and rejected Ardagh's baseless position—stating

bluntly, "[t]here is nothing in the patent that supports Ardagh's construction." D.I. 223.

Ardagh's other proposed constructions were equally meritless. Even though the '737

patent refers to flint colored glass more than thirty times, *see* JTX-1, Ardagh—the second largest

glass producer in the country—took the incredible position during *Markman* that "flint" was ***not***

a color of glass. Of course, everyone who knows anything about glass manufacturing knows that

flint is one of the three most common colors of glass. In fact, Ardagh's own website recognizes

as much, stating "we have 16 colors available, including the traditional choices of flint, amber,

and green." Ardagh Group, *Limitless Possibilities*, https://www.ardaghgroup.com/glass/americas

/design-process#!quality-service (last visited May 16, 2017). This too was a blatant non-

infringement argument, entirely divorced from the intrinsic record and reality. Green Mountain

never should have had to spend time or money opposing such frivolous constructions.

**Moving-target, objectively meritless invalidity case.** Over the course of this case,

21

Ardagh asserted no less than 37 invalidity references for the '737 patent and no less than 29 references for the '521 patent. Ardagh further asserted that the '737 patent was invalid for improper inventorship, that the '521 patent was invalid under Section 101, and that both patents were invalid for inadequate written description and indefiniteness. Ardagh also filed baseless IPR petitions on both patents, which the PTAB rejected as having no reasonable likelihood of success. Despite their lack of merit, Green Mountain spent considerable time and expense reviewing and responding to each of Ardagh's invalidity arguments, no matter how they morphed or grew over the course of the case. And yet, it was all a charade, for at trial, Ardagh dropped its invalidity case against the '521 patent, and focused almost exclusively on its previously-abandoned prior use defense for the '737 patent (although Ardagh's expert gave brief, conclusory testimony as to Duckett and Ross, Ardagh mentioned neither in opening or closing).

**Paying fact witnesses in violation of ethical rules.** Ardagh had a practice of improperly paying fact witnesses for their testimony in violation of ethical rules of conduct. *See* Model Rules of Prof'l Conduct R. 3.4(b) ("A lawyer shall not . . . offer an inducement to a witness that is prohibited by law."); *see also id.* cmt. 3 ("The common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying . . . ."). Ardagh did so even where the witness had not sustained any direct loss of income in connection with giving, or preparing to give, testimony. For example, former employee Steven Rhea admitted at trial that despite being retired, and despite receiving a full pension from Ardagh, Ardagh was still paying him $200 an hour for his testimony. *See* Tr. at 792:16-793:4. Former employee, Peter Walters, likewise confirmed that despite being retired, Ardagh was paying him $125 an hour for his testimony. Ex. 13 (Walters Dep. at 6:16). These improper payments gave rise to considerable risk of tainted testimony. *See, e.g.*, Delaware State Bar Association Committee on Professional Ethics Opinion

2003-3 at 11 (August 14, 2003). This Court has recognized that improperly compensating witnesses contributes to a case's exceptionality. *See In re: Rembrandt Technologies Patent Litigation*, MDL No. 07-md-1848 (GMS), slip op. at n.4 (D. Del. Aug. 20, 2015).

Equally exceptional was Ardagh's dishonest attempt to pass off Phil Ross as a fact witness at trial, rather than as the paid invalidity expert he truly was. After retaining Ross as a technical expert in March 2015, *see* Ex. 14 (Ross Dep. at 8-13), Ardagh purported to call Ross as a fact witness who could allegedly prove the '737 patent was invalid. Ardagh called Ross after Ardagh's expert Dr. Carty disavowed the Ross reference and the ability to reverse engineer at his deposition. *See* Tr. at 1147:21-1148:15; 1150:24-1152:4. Thus, unable to rely on Dr. Carty to establish these points, Ardagh tried to call Ross to establish them. Although Ross testified in his deposition the week before, "I am a technical expert," Ex. 14 at 8-13, in arguing against his exclusion at trial, Ardagh's counsel falsely represented to the Court, "He is not an expert, never been an expert in the case." Tr. at 737:11-12. Regardless of that blatant misrepresentation, calling Ross as a fact witness was highly inappropriate because he had previously been retained as a $200-an-hour expert to consult on Ardagh's litigation positions; and at trial, he actually charged Ardagh $1,600 a day at trial no matter how much time he spent on the case. *See* Ex. 14 at 8-13. Ardagh either bought and paid for fact testimony, or failed to disclose Ross as a testifying expert—either way, it was improper. Indeed, despite the Court ruling ***prior*** to testimony that Ross would not be allowed to give expert testimony, Ardagh repeatedly elicited testimony violating that ruling, requiring the Court to instruct the jury to disregard Ross's improper testimony on multiple occasions. *See, e.g.*, Tr. at 919:25-922:5.

**Failure to destroy Green Mountain's privileged documents.** Also standing out from other cases of its kind, Ardagh failed to destroy and cease use of Green Mountain's privileged

23

documents. Pursuant to the stipulated protective order, Green Mountain requested destruction of inadvertently-produced privilege documents on December 27, 2014. *See* Ex. 15. Ardagh's prior counsel sent a letter confirming destruction of those documents on December 31, 2014. *See id.* But, on May 19, 2016, Green Mountain came to learn that not all of those documents had been destroyed and some had actually passed to Ardagh's current counsel. *See* Ex. 16. Green Mountain immediately alerted Ardagh to its failure to destroy the privileged documents, and Ardagh again responded by assuring Green Mountain that the documents would be destroyed. But they were not destroyed, and in fact, Ardagh put one of the privileged documents on its trial exhibit list more a year after falsely claiming (again) that the document had been destroyed. *See* Ex. 17. Ardagh's reckless disregard for Green Mountain's privileged materials violated both the Federal Rules and ethical rules, and contributes to this case's exceptionality. *See* Fed. R. Civ. P 45(e)(2)(B); ABA Comm. on Ethics and Professional Responsibility, Formal Op. 94–382 (1994).

   **Last-minute, factually and legally baseless prior use defense.** Another telling example of Ardagh's bad faith litigation conduct is how Ardagh changed its entire defense strategy literally on the eve of trial—switching to a prior use defense the Friday before trial despite never pleading it, or presenting it in its expert reports, and which was baseless as a matter of law. *See OddzOn*, 122 F.3d at 1402. Ardagh justified its sandbagging by telling the Court that the Court's claim construction had resulted in an unexpected change. *See, e.g.*, Tr. at 10:8-9. The record demonstrates that the revised construction does not excuse Ardagh's actions. As a threshold matter, losing a baseless claim construction does not give Ardagh the right to fashion a new case on the eve of trial. Ardagh recognized this basic point prior to its last-minute switch. As early as its Paragraph 4(d) disclosures, Ardagh claimed to be disclosing and relying on "Prior Art that would be invalidating based on the scope or construction of the asserted claims of the Patents-in-

24

Suit *as set forth in Plaintiffs' 4(c) Disclosures*." Ex. 18 (emphasis added). And for every other reference in the case, Ardagh and its expert explicitly argued it did not matter whether the reference disclosed "sorted" or "unsorted" mixed color cullet. *See* Ex. 19 (Carty Report at ¶¶ 65-66, 207, 247, 296, 355, 409, 475, 521). Indeed, Ardagh even opposed summary judgment on this very ground: "Dr. Carty opined that it would have been obvious to try unsorted mixed color glass cullet, even if the prior art disclosed only sorted mixed color cullet." D.I. 197.

While the jury rejected Ardagh's newfound prior use, it should have been disclosed and tried from the outset, not the last day before trial. Yet, there is no mention of it in Ardagh's Paragraph 4(d) disclosures (D.I. 47), Ardagh's Amended Answer (D.I. 77), Ardagh's summary judgment letter brief or opposition (D.I. 194, 197), or in Ardagh's trial brief (D.I. 212, Schedule I2). Just the opposite, Ardagh's Answer stated, "[i]t is specifically denied that AGI used or is using any process, method, technique or technology" set forth in the '737 patent, D.I. 77 at ¶ 7, 16; and Ardagh stipulated in the pretrial order that it was "not asserting that prior use or invention by Ardagh or any of its predecessors-in-interest renders the '737 patent invalid, in whole or in part, or is otherwise a defense to infringement." D.I. 212, Schedule H. In the end, the defense was proved meritless by Ardagh's own files, but the trial by ambush violated the letter and spirit of the Federal Rules (and pretrial order) and substantially prejudiced Green Mountain.

In sum, when Ardagh's unreasonable and bad faith litigation conduct is coupled with the jury's finding that Ardagh's infringement "was especially worthy of punishment," this case indeed stands out as "exceptional," and favors awarding Green Mountain the attorneys' fees and expenses it was forced to incur in bringing Ardagh's "consciously wrongful" conduct to justice.

### b.    Plaintiffs' Fees and Expenses Are Reasonable and Were Necessarily Incurred

Determining the amount of a fee award under Section 285 is committed to the sound

discretion of the trial court. *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016). Courts in the Third Circuit have been directed to calculate attorneys' fees pursuant to the "lodestar" approach. *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000). The lodestar calculation produces a "presumptively reasonable fee" *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 310 (3d Cir. 2008). In addition to attorneys' fees, "an award under § 285 should include expenses." *Scripps Clinic & Research Found., Inc. v. Baxter Travenol Labs., Inc.*, No. CIV. A. 87-140-CMW, 1990 WL 146385, at *1 (D. Del. July 31, 1990); *Cent. Soya Co.*, 723 F.2d at 1578 ("We interpret attorney fees to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit."). "These expenses normally include those related to travel, food, lodging, telephone, mail, photocopying, facsimile, courier, filing fees, deposition transcripts, subpoena services, and other related services." *Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*, No. CV 12-1285-RGA, 2016 WL 3436396, at *5 (D. Del. June 15, 2016) (quotation omitted).

Green Mountain seeks an award of $4,625,887 in fees and $618,612.41 in expenses. Both requests are reasonable and well supported, and should be granted. *See* Declaration of Matthew Berry. Green Mountain seeks the "presumptively reasonable" lodestar amount, which was calculated by multiplying counsel's actual billing rates by the 3,836.2 hours that Green Mountain reasonably and necessarily incurred in litigating this case. *See id.* at ¶ X; *accord Spegon v. The Catholic Bishop of Chicago*, 175 F.3d 544, 554–555 (7th Cir. 1999) ("an attorney's actual billing rate is presumptively appropriate for use as the market rate."). The number of hours Green Mountain devoted to this case was appropriate and reasonable given, among other things, the complexity and length of the case, the number of documents produced, the number of depositions taken, the amount of third party discovery, the number and breadth of expert reports,

and the number of defenses asserted by Ardagh. Green Mountain's requested expenses are also reasonable, were necessarily incurred in prosecuting the case, and are adequately documented. *See Vehicle Interface*, 2016 WL 3436396 at *5. Green Mountain has submitted herewith line item descriptions of the expenses it incurred. *See* Berry Decl., at ¶ X.

Notably, according to the American Intellectual Property Law Association's 2015 Report of the Economic Survey, Green Mountain's total request of $5,244,499.91 is well below the median cost of $7,000,000 to litigate a patent infringement case in the Philadelphia area, where like here, more than $25 million was at stake. *Available at* https://www.accmeetings.com/AM16/faculty/files/Article_482_7928_LitSpend___AIPLA_2015_Report.pdf

## V.   Green Mountain Is Entitled to a New Trial Regarding Ardagh's Infringement of the '521 Patent If Ardagh Is Awarded Relief On Any Issue.

In the event that Ardagh is awarded relief on any issue, Green Mountain conditionally requests, under Federal Rules 50 and 59, a new trial regarding Ardagh's infringement of the '521 patent. *See Medisim Ltd. v. BestMed, LLC*, 758 F.3d 1352, 1359 (Fed. Cir. 2014) (conditional grant of a new trial was not an abuse of discretion). Green Mountain is entitled to a new trial for two distinct reasons, both of which prejudiced Green Mountain's ability to fully and fairly present its case, and tainted the jury's '521 non-infringement finding.

First, on the morning of the last day of trial, at Ardagh's urging and against standard practice, the Court ruled that Green Mountain was precluded from presenting any evidence to rebut Ardagh's non-infringement case. *See* Tr. at 1040:13-1041:22. With that ruling in mind, and feeling that it had adequately rebutted Ardagh's invalidity case through cross-examination, Green Mountain's counsel told the Court that Green Mountain was prepared to proceed to closing argument rather than put on a rebuttal case. *Id.* at 1220:2-4.

Immediately following a short recess, the Court requested a sidebar with counsel, stating

"I want to make sure that, given you're resting, not putting on rebuttal, that I didn't misperceive something." *Id.* at 1220:14-16. The Court then asked Ardagh for the basis of its objecting to Green Mountain putting on an infringement rebuttal, to which Ardagh's only response was "I think that's the way it usually works in this district." *Id.* at 1221:6-1222:16. The Court explained that it "misperceived what was being asserted," and replied, "you're incorrect about the practice of this Judge." When Ardagh pushed back, the Court continued and acknowledged the prejudice to Green Mountain: "Well, they have the burden of persuasion and proof. Right? I can say this. I don't recall ever having not permitted a plaintiff asserting infringement to rebut the defense, but apparently I just did. So we'll just have to see. You have your exception. I'm stating on the record what I'm stating and we'll just have to see whether there's going to be a re-do here. Sorry. That's all I can say." *Id.* at 1223:17-24; *see also id.* at 1226:16-24 ("I did not intend to convey that which I apparently did, that I was not going to let you put on a rebuttal case on infringement. That is just not my practice. I always let the party with the burden of proof put on their rebuttal case."). Because Ardagh precluded Green Mountain from presenting any evidence to rebut non-infringement, a "re-do" is required if Ardagh is granted a new trial or JMOL on any issue.

Second, a new trial regarding Ardagh's infringement of the '521 patent is also warranted because Ardagh intentionally sent exhibits back to the jury room organized by witness, in a binder with the witness's name on it. It did so, moreover, without notice to the Court or Green Mountain, and without affording Green Mountain the opportunity to do the same. *See* Tr. at 1342-1355. This was highly improper and unfair, and it very likely tainted the jury's non-infringement finding with respect to the '521 patent. Indeed, before Ardagh's improper method of collating exhibits came to light, the issue of exhibits in witness binders first arose as a result of the jury's "requesting Dr. Martin's direct examination binder to include his PowerPoint

28

presentation"—that is, his infringement exhibits and demonstratives. *Id.* at 1343:3-4. In response, the Court stated, "any binder given to a jury unguided seems to me to be fraught with some potential problems." *Id.* at 1343:13-14. The Court continued, "I would think if we are going to do that, we have to give them Dr. Carty's binder as well." Noting a principal concern was "undue emphasis placed on any particular witness' evidence," the Court stated, "I would be reluctant to just send back a binder of one witness." *Id.* at 1344:5-19. Ardagh's counsel agreed, "a hundred percent," noting "we do a lot to keep what they get to be . . . consistent and balanced. And any time you get a request for one thing or another, it throws off the balance." *Id.* at 1344:20-1345:1.

But when the jury responded that they already had "Dr. Martin's cross-examination binder" and would therefore need his direct examination binder, *see id.* at 1347:17-19, Ardagh's tune quickly changed. Ardagh's counsel sheepishly admitted that all of Ardagh's exhibits went back to the jury "in a binder that had the name of the person who was being examined with that [exhibit]." *Id.* at 1349:10-11. Suddenly no longer concerned that giving the jury access to one side's witness binders would "throw[] off the balance," Ardagh immediately downplayed its conduct by stating that it was merely "a matter of organization," *id.* at 1351:4-5. But as Green Mountain noted at the time, it was so much more than that, for "going through deliberations, [the jury] can go witness by witness for defense witnesses. For us it is just a pile of documents and number of order without any relation to it." *Id.*

That prejudice was real. Before Green Mountain had the opportunity to resubmit its exhibits in the same format as Ardagh had, the jury returned a verdict finding that Ardagh had not infringed the '521 patent. Just prior that, the jury had been denied the right to receive and review Green Mountain's infringement exhibits organized in a single binder—even though, throughout their deliberations, they had access to all of Ardagh's exhibits, including its cross

29

infringement exhibits, organized in easy-to-find, subject matter binders. The blatantly unfair manner in which each side's evidence was presented to the jury undoubtedly warrants awarding Green Mountain a new trial regarding Ardagh's infringement of the '521 patent.

Had Green Mountain been given the chance to rebut Ardagh's non-infringement arguments, or had the jury been given equal access to both side's evidence, no reasonable jury would have had a legally sufficient evidentiary basis to find for Ardagh on its infringement of the '521 patent. Fed. R. Civ. P. 50. In summarizing his non-infringement arguments as to the '521 patent, Ardagh's expert, Dr. Carty, stated, "There are eight steps in the Lehman patent. Ardagh does not practice three of them. These three steps do not import transmission property." Tr. at 1111:19-23. When asked to expand on that, he continued, "the way Ardagh does their process is the other direction. They don't start with a target per se of transmission values and say, what do I need in chemistry. They start with . . . the batch materials." *Id.* at 1112:4-8. Had Green Mountain been given the chance to rebut these claims, Dr. Martin would have pointed out that Dr. Carty's conclusions were directly contrary to Ardagh's Technical Operating Procedure on transmission properties, *see* PX-198, and to the Heidi Root's corporate testimony during discovery. *See* Ex. 20. (Root Dep. at 148:6-151:18) (". . . Q. My only point is that you already know what the client's specification is for the glass you're attempting to make, right? A. Yes. Q. And that specification has, for example, transmission properties, right? A. For which color? Q. For amber. A. Yes . . ."). Dr. Martin also would have reminded the jury of and expounded upon his testimony that Ardagh could have only hit their specifications "[o]ne in a trillion bottles, maybe," "had they not specified transmission properties from the outset." Tr. at 466:11-15; and that Ardagh's witnesses and documents admit that Ardagh "calculates" in an infringing manner.

## VI.    Conclusion

For the foregoing reasons, plaintiffs respectfully requests the Court grant this motion.

DATED: May 19, 2017                    Respectfully submitted,

                                        FARNAN LLP

                                        /s/ Brian E. Farnan
                                        Brian E. Farnan (Bar No. 4089)
                                        Michael J. Farnan (Bar No. 5165)
                                        919 North Market Street, 12th Floor
                                        Wilmington, DE  19801
                                        Telephone:  (302) 777-0300
                                        Facsimile:  (302) 777-0301
                                        bfarnan@farnanlaw.com
                                        mfarnan@farnanlaw.com

                                        Justin A. Nelson (admitted *pro hac vice*)
                                        SUSMAN GODFREY L.L.P.
                                        1000 Louisiana Street, Suite 5100
                                        Houston, TX 77002
                                        Telephone:  (713) 651-9366
                                        Facsimile:  (713) 654-6666
                                        Email:  jnelson@susmangodfrey.com

                                        Matthew R. Berry (admitted *pro hac vice*)
                                        John E. Schiltz (admitted *pro hac vice*)
                                        SUSMAN GODFREY L.L.P.
                                        1201 Third Avenue, Suite 3800
                                        Seattle, WA  98101-3000
                                        Telephone:  (206) 516-3880
                                        Facsimile:  (206) 516-3883
                                        Email:  mberry@susmangodfrey.com
                                        Email:  jschiltz@susmangodfrey.com

                                        Robert S. Bramson (admitted *pro hac vice*)
                                        BRAMSON & PRESSMAN
                                        1100 East Hector Street, Suite 410
                                        Conshohocken, PA 19428
                                        Telephone:  (610) 260-4444
                                        Facsimile:  (610) 260-4445
                                        rbramson@b-p.com

                                        **Attorneys for Green Mountain Glass LLC
                                        and CulChrome LLC**