IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GREEN MOUNTAIN GLASS, LLC AND CULCHROME, LLC,

Plaintiffs,

v.

SAINT-GOBAIN CONTAINERS, INC. dba VERALLIA NORTH AMERICA,

Defendant.

Civil Action No. 14-cv-392-GMS

JURY TRIAL DEMANDED

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PREJUDGMENT INTEREST, ENHANCED DAMAGES, ATTORNEYS' FEES, AND CONDITIONAL MOTION FOR A NEW TRIAL REGARDING ARDAGH'S INFRINGEMENT OF U.S. PATENT NO. 6,230,521**

DATED: June 23, 2017

Justin A. Nelson (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: jnelson@susmangodfrey.com

Steven M. Shepard (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 100019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
Email: sshepard@susmangodfrey.com

Matthew R. Berry (admitted *pro hac vice*)
John E. Schiltz (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: mberry@susmangodfrey.com
Email: jschiltz@susmangodfrey.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Robert S. Bramson (admitted *pro hac vice*)
BRAMSON & PRESSMAN
1100 East Hector Street, Suite 410
Conshohocken, PA 19428
Telephone: (610) 260-4444
Facsimile: (610) 260-4445
rbramson@b-p.com

***Attorneys for Green Mountain Glass LLC and CulChrome LLC***

# TABLE OF CONTENTS

Page

I. Green Mountain Is Entitled to an Award of Prejudgment Interest and Costs .....................1

II. Green Mountain Is Entitled to Treble Damages ...................................................................3

III. Green Mountain Is Entitled to its Reasonable Attorneys' Fees and Expenses ....................6

IV. A Conditional New Trial Is Appropriate If the Court Grants Ardagh Relief ....................12

V. Conclusion ..........................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Beckman Instruments, Inc. v. LKB Produkter AB*,
892 F.2d 1547 (Fed. Cir. 1989)........................................ 14

*Cent. Soya Co. v. Geo. A. Hormel & Co.*,
723 F.2d 1573 (Fed. Cir. 1983)........................................ 15

*ClearValue, Inc. v. Pearl River Polymers, Inc.*,
560 F.3d 1291 (Fed. Cir. 2009)........................................ 13

*Drone Techs., Inc. v. Parrot S.A.*,
2015 WL 4545291 (W.D. Pa. July 21, 2015) ........................................ 13

*Edwards Lifesciences AG v. CoreValve, Inc.*,
2011 WL 446203 (D. Del. Feb. 7, 2011) ........................................ 3

*EMC Corp. v. Zerto, Inc.*,
2016 WL 1291757 (D. Del. Mar. 31, 2016) ........................................ 3

*Energy Transp. Grp., Inc. v. Sonic Innovations, Inc.*,
2011 WL 2222066 (D. Del. June 7, 2011)........................................ 1, 2, 3

*Finjan Software v. Secure Computing Corporation*,
2009 WL 2524495 (D. Del. Aug. 18, 2009) ........................................ 5, 6, 7

*Fox v. Vice*,
563 U.S. 826 (2011)........................................ 12

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016)........................................ passim

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)........................................ 14

*Jurgens v. CBK, Ltd.*,
80 F.3d 1566 (Fed. Cir. 1996)........................................ 5, 6

*Kellogg v. Nike, Inc.*,
2010 WL 323994 (D. Neb. Jan. 20, 2010)........................................ 14

*Krippelz v. Ford Motor Co.*,
670 F. Supp. 2d 815 (N.D. Ill. 2009) ........................................ 7

*Lucent Techs., Inc. v. Newbridge Networks Corp.*,
168 F. Supp. 2d 269 (D. Del. 2001)........................................ 8

*Lummus Indus., Inc. v. D.M. & E. Corp.*,
862 F.2d 267 (Fed. Cir. 1988)........................................................................................ 2

*Mars, Inc. v. Coin Acceptors, Inc.*,
513 F. Supp. 2d 128 (D.N.J. 2007) ................................................................................. 3

*Mathis v. Spears*,
857 F.2d 749 (Fed. Cir. 1988)...................................................................................... 14

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
726 F.3d 1359 (Fed. Cir. 2013)..................................................................................... 14

*nCUBE Corp. v. SeaChange Int'l, Inc.*,
313 F. Supp. 2d 361 (D. Del. 2004)................................................................................. 7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014)............................................................................................. 1, 8

*PPG Indus., Inc. v. Celanese Polymer Specialties Co.*,
840 F.2d 1565 (Fed. Cir. 1988)..................................................................................... 15

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992)........................................................................... 3, 4, 5, 7

*Rode v. Dellarciprete*,
892 F.2d 1177 (3d Cir. 1990)........................................................................................ 13

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*,
2017 WL 2407870 (Fed. Cir. June 5, 2017) ...................................................................... 8

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
137 S. Ct. 954 (2017)..................................................................................................... 2

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.*,
932 F.2d 1453 (Fed. Cir. 1991)..................................................................................... 13

*Spectralytics, Inc. v. Cordis Corp.*,
649 F.3d 1336 (Fed. Cir. 2011)....................................................................................... 5

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
2017 WL 2385604 (D. Del. June 1, 2017)............................................................. 2, 9, 12

*Therasense, Inc. v. Becton, Dickinson & Co.*,
745 F.3d 513 (Fed. Cir. 2014)....................................................................................... 14

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
939 F.2d 1540 (Fed. Cir. 1991)....................................................................................... 2

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012)........................................................................................ 4

**Rules**

Model Rule of Professional Conduct R. 3.4(b).................................................................... 8

Green Mountain is entitled to treble damages and its reasonable attorneys' fees and expenses on account of the jury's willful infringement finding, which followed after Ardagh's unreasonable and vexatious litigation strategy. Although Ardagh attempts to downplay indisputable facts, those facts speak for themselves—as does the jury's finding that Ardagh is especially worthy of punishment. While these alone support Green Mountain's motion, Green Mountain has also provided significant support for the additional factors that guide this Court's exercise of discretion under *Halo* and *Octane Fitness*. Ardagh has failed to come forth with any ameliorating factors that mitigate against enhancement or fee-shifting under the totality of the circumstances. Because Ardagh's arguments regarding prejudgment interest, the reasonableness of Green Mountain's fees, and Green Mountain's conditional motion are similarly unpersuasive and contrary to controlling law, this Court should grant Green Mountain's motion in its entirety.

## I. Green Mountain Is Entitled to an Award of Prejudgment Interest and Costs

Ardagh's arguments for withholding prejudgment interest from Green Mountain are unpersuasive. In fact, this Court denied all of Ardagh's exact arguments when awarding prejudgment interest at the prime rate, compounded quarterly in *Energy Transp. Grp., Inc. v. Sonic Innovations, Inc.*, No. CA 05-422 GMS, 2011 WL 2222066, at *19 (D. Del. June 7, 2011).

As an initial matter, laches can no longer be interposed as a defense against patent damages. *E.g., SRI Int'l, Inc. v. Cisco Sys., Inc.*, No. CV 13-1534-SLR, 2017 WL 2385604, at *33 (D. Del. June 1, 2017) (rejecting delay argument based on *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 967 (2017); awarding interest at prime rate, compounded quarterly). But even before the Supreme Court eliminated laches, courts recognized "that the withholding of prejudgment interest based on delay is the exception, not the rule." *Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988). And Ardagh has "neither proven that [Green Mountain] unduly delayed in filing suit nor that they have been

prejudiced." *Energy Transp. Grp.*, 2011 WL 2222066 at *19 (prejudice claim was "contradicted by Defendants' actual conduct after having been put on notice of their infringement"). Indeed, Ardagh elsewhere admits that it "did not take any remedial measures because it had a good-faith belief that '737 patent was invalid or not infringed." Opp. at 11. Plus, had Green Mountain sued earlier, its running royalty damages and, thus, interest would have been greater, not reduced.

Ardagh's arguments regarding the rate are also wrong. This Court rejected the contention that prime rates were "risky" in *Energy Transp. Grp.*, 2011 WL 2222066 at *19. It also held, "a patentee does not have to 'demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate.'" *Id.* (quoting *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991)). Green Mountain nevertheless submits the Declaration of Anthony Lame confirming that Green Mountain was forced to borrow at a rate of 9% during the damages period. "Where a patent holder can show evidence of . . . the actual borrowing rate it would have avoided, courts have used that rate as the prejudgment interest rate." *Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp. 2d 128, 133 (D.N.J. 2007) (collecting cases); *accord, e.g.*, *K-TEC v. Vita-Mix*, 765 F. Supp. 2d 1304, 1316 (D. Utah 2011) ("Considering that pre-judgment interest is awarded in patent cases to make the patent holder whole, the court will apply K–TEC's borrowing rate during the period of infringement to calculate the pre-judgment interest.").

Accordingly, based on Green Mountain's actual borrowing rate, the Court can use a 9% rate, which adds $32,361,026.09 to the verdict through June 30, 2017 on a compounded quarterly basis, and a daily rate of $19,570.73 from July 1 through September 30, 2017. *See* Supplemental Declaration of Michael J. Lasinski. The 9% rate comports with the actual rate at which Green Mountain was forced to borrow, and is the most appropriate measure of prejudgment interest. In the alternative, where a party has not provided evidence of its borrowing rate, this Court has

routinely awarded interest at the prime rate, compounded quarterly. *See Energy Transp. Grp.*, 2011 WL 2222066 at *19; *EMC Corp. v. Zerto, Inc.*, No. CV 12-956(GMS), 2016 WL 1291757, at *14 (D. Del. Mar. 31, 2016); *Edwards Lifesciences AG v. CoreValve, Inc.*, No. C.A. 08-91-GMS, 2011 WL 446203, at *13 (D. Del. Feb. 7, 2011).

## II. Green Mountain Is Entitled to Treble Damages

Ardagh's opposition misapprehends the law of enhanced damages, the effect of these particular jury instructions, and the facts here. Based on the facts as presented to the jury and the jury's findings under the instructions <u>in this case</u>—as confirmed by the *Read* factors—this Court should award treble damages. Ardagh does not dispute Green Mountain's account of what the jury found, what the jury was instructed, or what *Halo* held. *Compare id.* at 5-7, *with* Opp. at 1-2. Indeed, Ardagh does not even mention the jury's willfulness findings in its opposition.

The jury found Ardagh deserved a punitive sanction for its egregious, defenseless, and ***intentional*** infringement. *See* Tr. at 1250-51. The jury also understood that this finding did not "affect any damage award [it] gave" because this Court would "take willfulness into account a later time." *Id.* at 1251-52. Willfulness does not require intentionality. *Halo*, 136 S. Ct. at 1933 (holding that knowing—*i.e.*, reckless—infringement is sufficient). Here, however, the jury was instructed only to find willfulness if Ardagh's infringement was intentional, egregious, and especially worthy of punishment. And the jury found all of the above. Those findings bring Ardagh squarely in line with "the most culpable offenders" said to warrant enhanced damages in *Halo*. 136 S. Ct. at 1932-34. Indeed, this Court's jury instruction for willfulness came directly from the language in *Halo* describing "[t]he sort of conduct warranting enhanced damages." *Id.* at 1932. "'Upon a finding of willful infringement, a trial court should provide reasons for not increasing a damages award.'" *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 37 (Fed. Cir. 2012). And yet, Ardagh has not presented any mitigating factors that should reduce a

treble damage enhancement in light of the jury's findings here. *See id.* at 1933-34 & n.* ("'bad-faith infringement' *is* an independent basis for enhancing patent damages.").

Skirting *Halo* and the jury's findings almost completely, Ardagh instead focuses on *Read* and attempts to relitigate the jury's findings. But *Read* cuts strongly in favor of trebling damages. Like *Halo*, *Read* makes clear that "[t]he paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992). Here, after considering all of the facts—including many of the *Read* factors—the jury found Ardagh engaged in "the most egregious" conduct "especially worthy of punishment." In fact, even though the jury found against Ardagh on *Read* factors 1 (copying), 2 (no reasonable belief of invalidity or non-infringement), 7 (no remedial action), and 9 (concealment), *see* Tr. at 1251:4-18, Ardagh reasserts the same, losing arguments it used to defend against willfulness to argue that such factors do not favor enhancement. That is not permitted. Br. at 9-10; *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996); *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1348 (Fed. Cir. 2011) ("after willful infringement is found, it is inappropriate to discount evidence relating to whether there was adequate investigation of adverse patent rights.").

This Court's decision in *Finjan Software v. Secure Computing Corporation* is instructive. There, like here, the infringer relied "on its previous arguments against willful infringement to support its contention that there was no deliberate copying." No. CA 06-369(GMS), 2009 WL 2524495, at *15 (D. Del. Aug. 18, 2009). This Court correctly refused to consider those arguments in deciding whether to enhance damages: recognizing that the jury necessarily found contrary to the infringer's claim, this Court cited *Jurgens* and held it would "give deference to the jury's findings in this regard, and will not substitute its own findings for those made by the

jury." *Id.* ("This factor, therefore, weighs in favor of enhanced damages."). No less is required here. Ardagh's attempt to distinguish *Jurgens* and its progeny is unpersuasive: Ardagh does not merely ask the Court to weigh "other 'factors that are mitigating or ameliorating,'" Opp. at 7, it urges the Court to make findings that directly contradict the jury's willfulness findings.

But even were the Court to reweigh this evidence, it would find that *Read* factors 1, 2, 7, and 9 and strongly favor treble damages. The evidence showed Ardagh copied the '737 patent, did not reasonably believe it was invalid or not infringed, tried to cover up its infringement, and failed to make a good faith effort to avoid infringing. *See* Br. at 7-11, 14-16. To make up for its demonstrable failures in proof, witness after Ardagh witness claimed to know nothing—behavior that made it more difficult for Green Mountain to uncover the facts, and which Ardagh's own counsel called "terrible." Tr. at 1225:18. The jury found Ardagh guilty of the core culpability factors evidencing the bad faith and egregious infringement that both *Halo* and *Read* say warrant enhanced damages, and the decision to enhance damages is qualitative, not quantitative. *See, e.g.*, *Finjan*, 2009 WL 2524495 at *16 (enhancing damages where five *Read* factors weighed in favor, two factors were neutral, and closeness and concealment weighed against enhancement).

The other *Read* factors also strongly favor treble damages. *See Read*, 970 F.2d at 827 (factors 4-9 are particularly relevant "in deciding on the extent of enhancement"). Ardagh's litigation behavior, factor 3, favors treble damages for the reasons discussed in connection with Green Mountain's entitlement to its attorneys' fees. As to factor 4, Ardagh does not dispute that it is a large public company that can withstand treble damages. *See Finjan*, 2009 WL 2524495 at *15. Regarding factor 5, "[t]he inquiry here is whether the question of willfulness was a close one," *Krippelz v. Ford Motor Co.*, 670 F. Supp. 2d 815, 823 (N.D. Ill. 2009), not whether the entire case was close. *See Read*, 970 F.2d at 827. Regardless, this case was not close. Ardagh

first filed an IPR, which it lost. Ardagh then lost every construction at *Markman*. Ardagh lost again when it tried to backdoor its losing claim construction into the plain and ordinary meaning, which the Court foreclosed as having no support in the patent. And when Ardagh reversed course and pursued an objectively unreasonable prior use defense, Ardagh lost at trial. The jury found Ardagh was especially worthy of punishment, and Ardagh had no real defense thereto, much less any valid defense under *Halo*. The jury found Ardagh infringed every asserted claim of the ’737 patent, that the ’737 patent was valid, and that Ardagh owed more than $50 million in damages. Surviving summary judgment does not make a case close. *See nCUBE Corp. v. SeaChange Int’l, Inc.*, 313 F. Supp. 2d 361, 390 (D. Del. 2004). And references to the ’521 patent are irrelevant, as the jury was properly instructed that willfulness is patent-specific, Tr. at 1250:18-20, and there are no ’521 damages being enhanced. As to factor 6, Ardagh does not dispute its infringement lasted at least seven and possibly seventeen years, which also favors treble damages. As does factor 7, since Ardagh concedes it was not motivated by objective concerns. *See* Opp. at 12.

## III. Green Mountain Is Entitled to its Reasonable Attorneys’ Fees and Expenses

This case stands out, and is thus exceptional, in three key respects that led to avoidable and significant expenditures of Green Mountain’s resources and the Court’s time. First, the jury found Ardagh willfully infringed the ’737 patent without a good-faith or reasonable belief “that it did not infringe or that the patent was invalid.” Tr. at 1250-51. When, like here, “an infringer does not act ‘prudently’ and ‘reasonably’ before engaging in infringing action, it is only ‘fair’ to allocate to the infringer the costs which the patent holder has to incur in order to seek redress.’” *Lucent Techs., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 269, 276 (D. Del. 2001). That is because this suit was entirely avoidable. Ardagh was given notice of and an offer to license the ’737 patent, and thus had a choice to take a license or not use the technology. If Ardagh had done either, this lawsuit would not have been filed. Ardagh instead willfully copied and profited from

that invention without Green Mountain's permission. Green Mountain should not have to pay to defend against such bad faith infringement. *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, No. 2016-2521, 2017 WL 2407870, at *4 (Fed. Cir. June 5, 2017).

Second, once this action was instituted, Ardagh pursued non-infringement and invalidity defenses that were "objective[ly] unreasonable[]." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 & n.6 (2014). Ardagh's first non-infringement defense depended upon a baseless construction of "mixed color cullet," which the Court flatly rejected as having "nothing in the patent that supports Ardagh's construction." D.I. 223. Indeed, Ardagh's construction directly contradicted the explicit definition of "mixed color cullet" provided in both patents-in-suit. Although Ardagh ***should have*** stipulated to infringement at that time—especially since it then argued that its prior, unchanged process anticipated the patent, *see* Tr. at 159:15-23—at trial, Ardagh claimed that it did not practice the "selectively decolorize" limitation. This too was baseless, cannot be squared with Ardagh's prior use defense, and the jury was correct to reject it. *See* D.I. 260 at 5-7. And yet, Ardagh's post-trial strategy is to relitigate everything, including by requesting the Court reconstrue (or construe for this first time) terms and test the jury's verdict thereunder. *See id.*; *SRI*, 2017 WL 2385604 at *33 (awarding fees where defendant reargued *Markman*, and asserted then dropped a horde of invalidity arguments and references).

Ardagh's invalidity arguments against the '737 patent were also objectively unreasonable.[1] *See* Br. at 21, 24-25. The PTAB twice rejected Ardagh's anticipation and obviousness arguments as having no reasonable likelihood of success. At trial, Ardagh made only passing reference to Duckett—which states, "decolorizing additivities do not appear to

[1] As was its non-existent invalidity case against the '521 patent: the PTAB denied Ardagh's IPR petition as having no reasonable likelihood of success; this Court denied Ardagh's § 101 motion at *Alice* step 1; and Ardagh never mentions, let alone defends, that it presented no invalidity defense at trial after asserting 29 invalidity references over the course of this case.

solve [the mixed color cullet] problem," Tr. at 1150:4-7—and to Ross—which Ardagh's own expert had previously disclaimed reliance on, *id.* at 1151:4-1152:4. Ardagh instead went all in on its last-minute anticipation by prior process defense. But that defense was both legally and factually baseless. Legally baseless because Ardagh conceded it anticipated only if one ignored the "selectively decolorize" limitation: Ardagh's lead counsel stated, "we don't do that because we don't selectively decolorize anything. We use the same process we've used since the early nineties," Tr. at 156:1-3; Ardagh's expert added, "[i]f you ignore selectively . . . then Ardagh's prior process describes everything that's described in the Mosch patent," *id.* at 1073:6-11. But it is black-letter law that no limitation can be ignored when proving anticipation. The claim was also legally baseless because, as Ardagh's own expert admitted on the stand, the reference did not explicitly disclose the use of mixed color cullet. He instead merely assumed mixed color cullet was used. *Id.* at 1128:7. But that too ran afoul of black-letter law. *See* D.I. 260 at 14-15. It was also factually unreasonable in light of Ardagh's own documents, which conclusively proved, under Ardagh's own assumptions, that mixed color cullet had not been used. *See id.* at 1147:9.

*Third*, lacking any objectively reasonable defense, Ardagh litigated this case in an exceptional and unreasonable manner. Notably, Ardagh does not dispute that it (1) failed to issue a timely and appropriately-scoped litigation hold; (2) failed to preserve relevant documents (indeed, Ardagh's opposition completely ignores this issue); (3) failed to comply with Paragraph 4(b) of the Default Standard of Discovery (here again, Ardagh never responds); and (4) failed (on multiple occasions) to destroy and cease use of Green Mountain's privileged materials. Ardagh's downplaying this conduct as "run-of-the-mill," "pedestrian," and "inadvertent" is concerning. Equally concerning is Ardagh's paying fact witnesses (some with full pensions) for their plainly interested testimony. Ardagh defends the practice by pointing to a California ethics

opinion, while ignoring Model Rule of Prof'l Conduct R. 3.4(b) and the Delaware ethics opinion counseling otherwise. *See* Br. at 22-23. It then defends paying Phil Ross $1,600 a day at trial no matter how much time he spent on the case by insisting he was a fact witness, and not an expert. Opp. at 18. While his deposition and trial testimony confirm he was an expert (be it consulting or testifying), Ardagh gives no explanation or support for why it was proper to pay an alleged fact witness such an exorbitant rate to testify as to "facts" its expert refused to adopt as opinions.

But Ardagh's vexatious and unreasonable litigation strategy—of doing nearly whatever it took to delay, obfuscate, complicate, run-up-the-tab, and avoid liability—is perhaps manifested best by the false, later-disclaimed Katie Flight declaration and Ardagh's continued, wrongful defense thereof. While Ardagh again attempts to downplay Ms. Flight's refusing to stand by the declaration she previously swore under oath she could and would ratify, Opp. at 9, Ms. Flight's testimony (like all of Ardagh's deposition testimony) speaks for itself. *See* Br. at 12 & Ex. 5. More troubling is Ardagh's refusal to acknowledge that Ms. Flight or Ardagh did anything wrong. Ardagh claims "Ms. Flight's declaration conformed to a claim construction under which 'unsorted' had its plain and ordinary meaning." Opp. at 8. Totally false. The word "unsorted" does not appear in the declaration, which states Ardagh does not use or purchase "mixed color cullet," and the declaration was executed in August 2014, PX-111, 20 months before this Court construed any term, *see* D.I. 151. Nor is Ms. Flight, who is neither a lawyer nor a POSITA, even competent to construe such terms, as she herself confirmed. *See* D.I. 252, Ex. 5 at 262:4-268:22.

In an attempt to defend its falsely telling the jury Ms. Flight's testimony "does not have anything to do with an issue you have to decide," Tr. at 1325:22, Ardagh claims the testimony "was and remains irrelevant to infringement, invalidity, and willful infringement (since she was not an officer of Ardagh having any authority to decide how Ardagh makes glass)." Opp at 9.

Again, totally false. The declaration states on its face that Ms. Flight was "competent to make this Declaration," had knowledge of facts relating to the "cullet used by Ardagh for the manufacture of recycled glass products," and was "duly authorized to offer this Declaration on behalf of Ardagh." PX-111. It was plainly relevant to infringement, as Ardagh attached it as Exhibit 2 to its Paragraph 4(b) disclosures. It was also relevant to prior use and willfulness, as evidence of Ardagh's attempt to conceal its infringement and to rebut Ardagh's newfound claim that it had always been using mixed color cullet. While other Ardagh witnesses also gave know-nothing testimony, Br. at 18-19, the Flight testimony and declaration exemplified Ardagh's litigation behavior. Ardagh's new lead counsel was correct to call it "terrible." Tr. at 1325:18.

Ardagh's further claim that Green Mountain's fees are unreasonable also fails. Notably, Ardagh does not challenge Green Mountain's hourly rates, its total hours expended (3,836.2), or its total lodestar ($4,625,887). *See* Opp. at 24-26. Ardagh's acknowledging that these figures are reasonable is dispositive, especially since Green Mountain's request is well below the median cost of $7,000,000 to litigate a one-patent case in this market, with more than $25 million at stake. Br. at 27; *see also SRI*, 2017 WL 2385604 at *33 (awarding $7,934,881.75 in fees in two-patent case, lasting 2.75 years). Ardagh also does not challenge and thus concedes as reasonable and appropriate reimbursing Green Mountain's $618,612.41 in expenses it necessarily incurred.

Ardagh instead complains that Green Mountain allegedly provided insufficient documentation regarding how individual hours were expended, and that Green Mountain cannot recover any fees related to the '521 patent or IPR proceedings. None of Ardagh's arguments is well taken. "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "[T]rial courts need not, and indeed should not, become green-eyeshade accountants." *Id.* Indeed, "a district court itself has

experience in determining what are reasonable hours and reasonable fees, and should rely on that experience and knowledge" when awarding fees. *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1459 (Fed. Cir. 1991) (even "'where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee'"). And Courts routinely gauge reasonableness by reference to the AIPLA Survey. *See Drone Techs., Inc. v. Parrot S.A.*, No. 2:14-CV-00111-AJS, 2015 WL 4545291, at *7 (W.D. Pa. July 21, 2015) (collecting cases).

The Federal Circuit has also made clear that there is no set format in which a party must document its attorneys' fees. *See ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1305 (Fed. Cir. 2009) (approving award based on "a six-line spreadsheet, indicating only the hours, rate, and fees incurred by each attorney" with no description of tasks). Green Mountain's brief and declaration are "specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) ("'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'"). Should the Court wish to delve further, Green Mountain will submit to the Court for *in camera* review its contemporaneous, detailed billing records that support its annual summaries in its declaration.

Ardagh's arguments as to the '521 patent and IPR proceedings are also meritless. "[A] case should be viewed more as an 'inclusive whole' rather than as a piecemeal process when analyzing fee-shifting under § 285." *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 516 (Fed. Cir. 2014). "Where, as here, a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation.'" *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). That is especially true here given the

excellent results achieved over Ardagh's vexatious defense, and because Green Mountain already excluded all expert fees, which is where any '521-specific expenses would exist.

As the undisputed prevailing party, Green Mountain is entitled to recover full fees for three additional reasons. *First*, Ardagh's litigation conduct was not cabined to matters concerning the '737 patent, and instead "affected every stage of the litigation." *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1369 (Fed. Cir. 2013). *Second*, Ardagh maintained, and Green Mountain was forced to defend against, an objectively unreasonable invalidity counterclaim to the '521 patent, which Ardagh only dropped during trial. *See Kellogg v. Nike, Inc.*, No. 8:07CV70, 2010 WL 323994, at *5 (D. Neb. Jan. 20, 2010). *Third*, where a defendant is a willful infringer, the policies behind § 285 can "justify imposing all of the patent owner's attorney fees on the infringer, even if the infringer prevailed as to some of the claims in suit." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989). Should the Court disagree, a 90% multiplier is appropriate in light of the substantial overlap between the patents, and Green Mountain succeeding on every issue but '521 infringement.

Green Mountain is also entitled to the fees it incurred in defeating Ardagh's objectively unreasonable IPR petitions, which were plainly "related to the suit," *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983). *See* D.I. 100; *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1568 (Fed. Cir. 1988) (abuse of discretion to deny fees for "legal services rendered before the PTO in opposing PPG's reissue applications").

## IV. A Conditional New Trial Is Appropriate If the Court Grants Ardagh Relief

Ardagh's opposition to the conditional motion for a new trial is unpersuasive. As the Court recognized at the time, the prejudice to Green Mountain from Ardagh's precluding it from presenting a rebuttal infringement case is self-evident: Green Mountain was entirely prevented from rebutting Ardagh's arguments on an issue that Green Mountain carried "the burden of

persuasion and proof." Tr. at 1223:17-24. Indeed, Ardagh does not dispute that Green Mountain was prevented from challenging Ardagh's incorrect and misleading testimony and from having the "battle of the experts" that is so important to resolving infringement. *See* Br. at 30. Ardagh's "you should have brought him back" gesture ignores that the damage was already done. Green Mountain did not decline to do so because Dr. Martin was physically unavailable. Instead, it would have been highly prejudicial for Green Mountain to switch gears at the last moment and renege on their promise to the jury, after five long trial days, that they would proceed to closings. *See* Tr. at 1224:2-1225:17. After all, members of the jury gasped with excitement at the prospect, and the Court remarked, "That's wonderful . . . this is a very nice development." *Id.* at 1220:2-8.

Ardagh's defense of its sending exhibits back to the jury in binders organized by witness, with the witness's name on it, is surprising. The Court never instructed the parties to submit their evidence organized by witness, and the parties were not "aware of the difference in presentation," as Ardagh now claims. *See* Tr. at 1347:20-24. In fact, Ardagh originally objected to the jury receiving a binder used with Dr. Martin precisely because no agreement existed. The question of the meet and confer was binders or folders, either of which was acceptable to the Court. Green Mountain chose folders, Ardagh chose binders. As is customary, Green Mountain organized its exhibits in numerical order. Without informing Green Mountain or the Court it was doing so, Ardagh departed from standard practice and organized its exhibits by witness, with the witness's name on it. Ardagh thereby placed "undue emphasis" on ***all*** of its evidence. *Id.* at 1344:5-19. Whether it is "impossible to determine whether the jury was affected" is irrelevant; it is undisputed that the jury was denied equal access to evidence based on how Ardagh submitted its exhibits, and immediately afterwards, the jury found the '521 patent not infringed.

## V. Conclusion

For the foregoing reasons, plaintiffs respectfully request the Court grant their motion.

DATED: June 23, 2017										Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Justin A. Nelson (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: jnelson@susmangodfrey.com

Matthew R. Berry (admitted *pro hac vice*)
John E. Schiltz (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: mberry@susmangodfrey.com
Email: jschiltz@susmangodfrey.com

Steven M. Shepard (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 100019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
Email: sshepard@susmangodfrey.com

Robert S. Bramson (admitted *pro hac vice*)
BRAMSON & PRESSMAN
1100 East Hector Street, Suite 410
Conshohocken, PA 19428
Telephone: (610) 260-4444
Facsimile: (610) 260-4445

rbramson@b-p.com

***Attorneys for Green Mountain Glass LLC and CulChrome LLC***