## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GREEN MOUNTAIN GLASS, LLC, et al., | |
| Plaintiffs, | C.A. No. 14-392-GMS |
| v. | |
| SAINT-GOBAIN CONTAINERS, INC., d/b/a VERALLIA NORTH AMERICA, | |
| Defendant. | |

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
### RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR,
### IN THE ALTERNATIVE, FOR A NEW TRIAL

Dated: June 23, 2017

Of Counsel:

John Allcock (*admitted pro hac vice*)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Telephone:  (619) 699-2828
Facsimile:  (619) 764-6628
john.allcock@dlapiper.com

Paul Steadman (*admitted pro hac vice*)
Matthew Satchwell (*admitted pro hac vice*)
Ferlillia V. Roberson (*admitted pro hac vice*)
Steven Reynolds (*admitted pro hac vice*)
**DLA PIPER LLP (US)**
203 North LaSalle Street, Suite 1900
Chicago, IL  60601-1293
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
paul.steadman@dlapiper.com
matthew.satchwell@dlapiper.com
ferlillia.roberson@dlapiper.com
steven.reynolds@dlapiper.com

Brian A. Biggs (DE Bar No. 5591)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE  19801-1147
Telephone:  302-468-5700
Facsimile:  302-394-2341
brian.biggs@dlapiper.com

*Attorneys for Defendant and Counterclaim Plaintiff Saint-Gobain Containers, Inc. d/b/a Verallia North America, now known as Ardagh Glass Inc.*

Stuart E. Pollack (*admitted pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY  10020-1104
Telephone:  (212) 335-4964
Facsimile:  (212) 884-8464
stuart.pollack@dlapiper.com

Kathryn Riley Grasso (*admitted pro hac vice*)
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC  20004
Telephone:  (202) 799-4000
Facsimile:  (202) 799-5000
kathryn.riley@dlapiper.com

Dawn M. Jenkins (*admitted pro hac vice*)
**DLA PIPER LLP (US)**
1000 Louisiana Street, Suite 2800
Houston, TX  77002-5005
Telephone:  (713) 425-8400
Facsimile:  (713) 425-8401
dawn.jenkins@dlapiper.com

# TABLE OF CONTENTS

**Page**

I.    ARDAGH DOES NOT INFRINGE THE '737 PATENT.................................................1

    A.    It is the <u>Colors</u> "of Said . . . <u>*Cullet*</u>" that Are Selectively Decolorized/Colorized. ........................................................................1

    B.    There Is No Justification for Reading the "of Said . . . Cullet" Language Out of the Selectively Decolorizing/Colorizing Limitation. ................................1

    C.    Plaintiffs Failed to Establish an Evidentiary Basis for Infringement. ...................2

    D.    The Egregious Conduct by Plaintiffs' Counsel Prejudiced Ardagh. ....................4

II.    ARDAGH DID NOT ACT WILLFULLY. ....................................................................4

III.    THE ASSERTED CLAIMS OF THE '737 PATENT ARE INVALID. ...........................6

IV.    ADDING "UNSORTED" TO THE PATENT MEANS SOMETHING, AND THE COURT SHOULD RECONSIDER CLAIM CONSTRUCTION POST-TRIAL.............................................................................................................9

    A.    Claim Construction Should Be Considered in Post-Trial Motions.......................9

    B.    "Unsorted … Cullet" Cannot Include Cullet that Has Been Sorted. ...................11

V.    THE '521 PATENT IS UNPATENTABLE AS A MATTER OF LAW. .......................11

VI.    THE DAMAGES VERDICT OVERSTATES THE VALUE OF THE INVENTION..........................................................................................................11

VII.    ARDAGH'S EQUITABLE DEFENSES BAR PLAINTIFFS' RELIEF .......................12

VIII.    CONCLUSION ..........................................................................................................13

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Original Corp. v. Jenkins Food Corp.*,
   774 F.2d 459 (Fed. Cir. 1985).............................................................................5

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003)...........................................................................6

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
   605 F.3d 1305 (Fed. Cir. 2010)................................................................... 12, 13

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
   460 F.3d 1349 (Fed. Cir. 2006)..........................................................................10

*Cornell Univ. v. Hewlett-Packard Co.*,
   654 F. Supp. 2d 119 (N.D.N.Y. 2009) ...........................................................9, 10

*Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*,
   2017 WL 2588065 (C.D. Cal. June 13, 2017) ....................................................13

*Ecolab, Inc. v. Paraclipse, Inc.*,
   285 F.3d 1362 (Fed. Cir. 2002)............................................................................9

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
   340 F.3d 1314 (Fed. Cir. 2003)..........................................................................10

*IMX, Inc. v. E-Loan, Inc.*,
   748 F. Supp. 2d 1354 (S.D. Fla. 2010)...............................................................13

*Intellectual Ventures I, LLC v. Canon Inc.*,
   104 F. Supp. 3d 629 (D. Del. 2015) .....................................................................4

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001)..........................................................................10

*Johns Hopkins Univ. v. CellPro*,
   931 F. Supp. 303 (D. Del. 1996), *aff'd*, 152 F.3d 1342 (Fed. Cir. 1998) ...............9

*Kim v. ConAgra Foods, Inc.*,
   465 F.3d 1312 (Fed. Cir. 2006)............................................................................3

*Krippelz v. Ford Motor Co.*,
   667 F.3d 1261 (Fed. Cir. 2012)............................................................................3

ii

*Robocast, Inc. v. Apple Inc.*,
  39 F. Supp. 3d 552 (D. Del. 2014) ......................................................................................6

*State Indus., Inc. v. A.O. Smith*,
  751 F.2d 1226 (Fed. Cir. 1985)............................................................................................5

*Studiengesellschaft Kohle mbH v. Dart Indus., Inc.*,
  666 F. Supp. 674 (D. Del 1987) ...........................................................................................5

*TruePosition Inc. v. Andrew Corp.*,
  568 F. Supp. 2d 500 (D. Del. 2008) ...................................................................................13

*Unique Concepts, Inc. v. Brown*,
  939 F. 2d 1558 (Fed. Cir. 1991).........................................................................................11

*Unisplay, S.A. v. American Elec. Sign Co., Inc.*,
  69 F.3d 512 (Fed. Cir. 1995) .............................................................................................12

*Verdegaal Bros., Inc. v. Union Oil Co. of Calif.*,
  814 F.2d 628 (Fed. Cir. 1987)..............................................................................................7

*Wi-Lan, Inc. v. Apple, Inc.*,
  811 F.3d 455 (Fed. Cir 2006)..............................................................................................10

*Wright Asphalt Prods. Co. v. Pelican Refining Co.*,
  No. H-09-1145, 2012 WL 1936416 (S.D. Tex. May 29, 2012)...........................................10

## OTHER AUTHORITIES

Rule 59(e) ...................................................................................................................................10

Ardagh respectfully requests judgment as a matter of law or a new trial for the reasons set forth in its opening brief (D.I. 249), and files this reply to Plaintiffs' opposition (D.I. 260).

## I.     ARDAGH DOES NOT INFRINGE THE '737 PATENT

Plaintiffs wrongly turn their failure of proof on the "selectively" limitation into a dispute over claim construction and Plaintiffs' strained interpretation of that term. But Plaintiffs cannot escape the complete lack of evidentiary basis for a finding of infringement.

### A.     It is the _Colors_ "of Said . . . _Cullet_" that Are Selectively Decolorized/Colorized.

The claims are drawn to selectively colorizing/decolorizing particular colors of the glass cullet. Ex. 42, Claim 18.[1] Therefore, Dr. Martin's admission that the basis for his opinions is that the claims have "nothing to do with the cullet" (Pls. Resp. Br. at 6 (citing Tr. 415:10-21)) is dispositive and clearly demonstrates that he (and the jury) ignored the limitation. Dr. Martin also admitted that he did not "ma[k]e th[e] distinction" between "whether the undesired color is a color in the glass cullet or a color in the glass batch as a whole." Tr. 535:1-16. This is therefore not a dispute over the meaning of "selectively" (Pls. Resp. Br. at 5), because Plaintiffs do not dispute its plain and ordinary meaning. Instead, Plaintiffs rewrite the claim language: changing it from "at least one of the colors of said unsorted mixed color glass cullet" (Ex. 42, claim 18 (emphasis added)) to "at least one of the colors in the batch, not specifically the cullet . . . ." (Pls. Resp. Br. at 5 n.1 (emphasis altered)). This is effectively a third dispositive admission, each of which justifies judgment as a matter of law or a new trial.

### B.     There Is No Justification for Reading the "of Said . . . Cullet" Language Out of the Selectively Decolorizing/Colorizing Limitation.

Plaintiffs failed to cite any authority to support their position that "of said . . . cullet" can be read out of the "selectively" limitation. Plaintiffs need to read this term out of the claims

---

[1] Transcript Excerpts and Exhibits are attached to the Biggs Declaration filed herewith.

because Dr. Martin admitted he did not have evidence that the claims are infringed if that language is preserved. Pls. Resp. Br. at 6 (citing Tr. 415:10-21 (Martin)). Dr. Martin testified that colors of the cullet cannot be selectively decolorized/colorized "once everything is melted" because at that point, "[t]he glass cullet is gone. It's dissolved into the melt." Tr. 415:17-19. What remains is "a uniform melt" (Tr. 426:2-8) having a single uniform color. But there are multiple stages in the melting process. Tr. 395:8-396:4, 421:24-422:3 (Martin). Dr. Martin failed to analyze those stages, or the chemistry and atmospheric conditions in Ardagh glass melt batches, to determine how the ingredients interacted before reaching their uniform state.[2]

Instead, Dr. Martin conducted his analysis "just by looking at Ardagh's batch records" (Tr. 417:19-24) even though he admitted that approach is insufficient: "One would need to know the make up not only of the batch composition, but as is taught in the Lehman Patent[,] one would need to know the details of all of the component oxides of all of the raw materials." Ex. 35 (Martin Dep.) 228:7-12 (emphasis added); *id.* at 131:7-10, 224:24-228:6, 310:10-312:8 (because glass solutions are "extremely non-ideal . . . , the effect of a chemical additive is not just a simple function of composition"). It is undisputed there is no evidence on these points.

## C.   Plaintiffs Failed to Establish an Evidentiary Basis for Infringement.

Even if Plaintiffs' argument that "'selectively decolorize' means 'decolorizing a particular color'" (Pls. Resp. Br. at 6) were correct, Plaintiffs failed to establish infringement. Dr. Martin relied on a demonstrative color spectrum, which is not evidence. Tr. 572:10-573:21 (citing Ex. 43). It also bore no relation to the claims. Slide 24 (Ex. 43) depicted masking the

---

[2] This also explains why Plaintiffs' reliance on the final ("creating") step of claim 18 (Pls. Resp. Br. at 5, n.1) is to no avail. The "creating" step occurs after the glass batch is fully melted and homogenized. It is two steps removed from when the "selectively" colorizing and decolorizing agents are added. D.I. 145-1 at 1. Thus the description of a "colorized/decolorized virgin batch mixture" makes sense, but only after the full melting process has completed. But this ignores the prior claim step.

2

purple, blue, green, and some of the yellow wavelengths all at once. *Id.* (*see* furled, black sunshade above spectrum). Dr. Martin testified about blocking a whole "region of the electromagnet spectrum." Tr. 414:4-12, 415:10-21. The asserted claims recite actual colors in terms of glass bottles and cullet (*e.g.,* flint, amber, and green (Tr. 408:22-409:7)), not arbitrary color "regions." As a result, Dr. Martin's demonstratives were untied to the claims.

In the end, Dr. Martin's conclusions rested solely on his say-so. He only looked at "raw material list[s]" (in Ardagh batch histories), called out certain substances, and ignored the rest. Tr. 413:22-419:6; 538:11-539:5. He conducted no chemical analysis to determine which colors were present in any batch, how they were affected, or if any of the substances he identified acted "selectively," as claimed. § I. B *supra.* He just "know[s] their behaviors." Tr. 414:24-415:3.

Conclusory statements about whether claim language is met cannot sustain a jury verdict. *See, e.g., Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1268-69 (Fed. Cir. 2012). The Federal Circuit's decision in *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1316, 1320 (Fed. Cir. 2006) applies here. After the jury found for the plaintiff on infringement, the trial court granted defendant's JMOL of non-infringement. *Id.* at 1317. Just as in this case, the plaintiff's "evidence of infringement . . . was by analogy. . . . Since the accused products included the same ingredients as the patented composition, [the plaintiff] simply assumed that they had the same effects on dough as did the patented composition." *Id.* at 1319. The Federal Circuit affirmed on the grounds that the plaintiff's expert provided "conclusory testimony" about the effect of additional ingredients on the accused bread dough and "did not support this determination with any examinations or tests of the actual accused products." *Id.* at 1320. That is the same type of hand-waving Plaintiffs relied on here: listing <u>ingredients</u> and making a generalized analogy to the color spectrum, with no examination or tests of the actual accused <u>process</u>, much less any

3

actual demonstration or proof of how that process could match up to the asserted claims.

### D. The Egregious Conduct by Plaintiffs' Counsel Prejudiced Ardagh.

Plaintiffs' "offense" was severe (Tr. 713:5-714:7) and not limited to a "single follow-up question" (Pls. Resp. Br. at 6-7). Plaintiffs intentionally elicited expert testimony and legal conclusions from a fact witness. Tr. 709:23-712:22. After being admonished and ordered "not [to] repeat the offense again," Plaintiffs' counsel did so in closing. *Compare id.* 712:21-22 and 714:2-7 (striking question about "prov[ing] infringement of Claim 18") *with* Tr. 1289:18-20 ("So does Ardagh infringe the '737 patent? You have heard Mr. Keener on the stand going through every element about how it meets the '737 patent." (emphasis added)).

Plaintiffs' authority is inapposite, because their actions were more than just attorney argument (Pls. Resp. Br. at 7) and more prejudicial than those in *Intellectual Ventures I, LLC v. Canon Inc.*, 104 F. Supp. 3d 629, 659 (D. Del. 2015), where the offending attorney used his own witness's testimony. While Ardagh did not move for a mistrial, counsel requested an instruction and "whatever else" the court deemed appropriate. Tr. 713:23-25. Now that Plaintiffs' lawyer has flouted the Court's order and committed the same offense in closing, a mistrial is appropriate: "The instruction was not repeated after [defendants'] closing argument, when it took improper liberties with the court's prior ruling. . . . [T]he instruction was insufficient to cure the prejudice. . . . The court . . . did not, anticipate [the witness's] testimony to be used as a springboard for a non-infringement argument . . . ." *Canon*, 104 F. Supp. 3d at 659.

## II. ARDAGH DID NOT ACT WILLFULLY

There is no evidence that Ardagh copied Plaintiffs' patent.[3] Indeed, Plaintiffs contend that Ardagh was using the process accused of infringement since 1996 in connection with "copper oxide." Pls. Op. Br. at 8 *citing* Tr. 796:7-11. But the '737 Patent did not issue until

---

[3] Plaintiffs are incorrect. PX-25 (Ex. 36) is not evidence of copying. *See* Def. Resp. Br. at 3-4.

February 17, 1998—two years later—and the application leading to that patent was not filed until July 18, 1996. There is no evidence that Plaintiffs shared the details of their patent application in 1996. Ardagh could not have copied it, since "[t]o willfully infringe *a patent*, the patent must exist." *State Indus., Inc. v. A.O. Smith*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).

Contrary to Plaintiffs' assertions, the Federal Circuit has long held that "[t]he patentee's actions are a relevant consideration in the willfulness determination." *Studiengesellschaft Kohle mbH v. Dart Indus., Inc.*, 666 F. Supp. 674, 695 (D. Del 1987) (*citing A.O. Smith*, 751 F.2d at 1226 and *Am. Original Corp. v. Jenkins Food Corp.*, 774 F.2d 459 (Fed. Cir. 1985)). In *A.O. Smith,* State never advised Smith of its contention that Smith infringed until filing suit, and the Federal Circuit reversed the district court and held Smith's infringement nonwillful because of State's inaction. 751 F.2d at 1236. Similarly, in *American Original*, "prior to filing the present suit American never informed Jenkins that in its opinion Jenkins was infringing the Marvin patent," and thus, the infringement was not willful. 774 F.2d at 465.

Here, not only did Plaintiffs not advise Ardagh that it was infringing, but after many meetings, and after seeing Ardagh's process from 1999 through 2014, Plaintiffs waited until the patent was nearly expired to sue. Moreover, in 1999, Ardagh's attorney advised Plaintiffs that Ardagh did not need a license. Ex. 37. These facts are similar to *Studiengesellschaft*, where the infringer Dart advised the patent owner in 1964 that it did not need a license, but the patent owner did not sue Dart until 1970. 666 F. Supp. at 688. That delay "justified the different approaches to the patents Dart took" and was key to overturning a Special Master's willfulness finding. *Id.* at 689. Here, Plaintiffs' 15-year delay justifies overturning the willfulness finding.

Ardagh's post-filing conduct does not justify a willful finding. Plaintiffs never sought a preliminary injunction. Even post-*Halo*, "[a]llowing a finding of willfulness based on post-suit

5

conduct would put enhanced damages at issue whenever a defendant opted to deny infringement and take the case to trial." *Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 568 (D. Del. 2014).

Plaintiffs argue that the jury instructions preclude this Court's review of willfulness for substantial evidence. Pls. Op. Br. at 6. That the jury made a willfulness finding does not preclude review. Def. Resp. Br. at 1-12. There is not sufficient evidence to find willfulness in this case.

## III.   THE ASSERTED CLAIMS OF THE '737 PATENT ARE INVALID

The Court's construction of "mixed color cullet" encompasses virtually all post-consumer cullet, which Ardagh and the industry have been using for decades. *See* Def. Op. Br. at 9-11. Plaintiffs rely on the breadth of that construction for infringement, and argue *any* cullet with more than one color infringes. Tr. 520:13-522:15; Def. Op. Br. at 9-11. Yet, for invalidity, Plaintiffs treat "mixed color cullet" narrowly, arguing "not all 'external cullet' is 'mixed color cullet.'" Pls. Resp. Br. at 14. Curiously, Plaintiffs then cite the patent and an article (Ex. 38) that both distinguish mixed color cullet from the sorted, color-separated cullet that the prior art discloses. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both invalidity and infringement."). Plaintiffs cannot have it both ways: either sorted cullet is outside the claims or it is not.

Likewise, Plaintiffs claim that "selectively decolorize" means "decolorizing a particular color" that has "nothing to do with the cullet." Pls. Resp. Br. at 6. Dr. Martin testified that merely the presence of a colorizer or a decolorizer in a batch formula satisfied the claims. Tr. 413:14-414:19. Relying on Dr. Martin's interpretation, Dr. Carty showed the use of colorizers and decolorizers in Ardagh's pre-1995 process, Duckett, and the Ross Batch Calculations. Plaintiffs do not dispute that all of the asserted prior art discloses the use of colorizers and decolorizers.

Plaintiffs' remaining arguments rely on flawed assumptions. *First*, Dr. Carty did not assume Ardagh's prior art process used mixed color cullet; unlike Dr. Martin, he relied on

6

documents, testimony, and his experience. The prior art batch formulas Ardagh presented disclosed the use of mixed color cullet. Ex. 39; Tr. 956:11-957:20 (Root); Tr. 1077:22-1079:22 (Carty). Ardagh and third party witnesses corroborated that post-consumer cullet prior to 1995 was all mixed color cullet. Def. Op. Br. at 10-11. That the Plainfield-A batch formula listed simply "cullet" is irrelevant, as the prior art reference need not use the precise terminology of the patent. *Verdegaal Bros., Inc. v. Union Oil Co. of Calif.*, 814 F.2d 628, 633 (Fed. Cir. 1987) (judgment of anticipation as a matter of law where prior art reference did not call or recognize a particular element as a "heat sink" but disclosed a structure that performed that function). Here, the cullet disclosed in the Plainfield-A batch formula was "mixed color cullet," as corroborated by the unrebutted testimony. Tr. 956:11-957:20 (Root); Tr. 1077:22-1079:22 (Carty).

*Second*, Plaintiffs offered no reliable evidence to rebut the several documents and witness testimony that established *all* post-consumer cullet has *always* been mixed color cullet under the Court's broad construction. PX-406 (Ex. 40) deserves no weight. The document was never on Plaintiffs' exhibit list, was not introduced through any fact witnesses, and was not considered in any expert report. Plaintiffs laid no foundation for the document at deposition or trial and set forth no facts to assist the Court or the trier of fact in determining its relevance. Plaintiffs did not establish who performed the testing, what was tested, how it was tested, what parameters were considered, or even who maintained these records. The data is unreliable at best, and may well be flatly incorrect. Even still, Plaintiffs make the classic necessity vs. sufficiency logical fallacy. Just because the presence of chrome is sufficient to indicate mixed color cullet, the absence of chrome does not mean it is not mixed color cullet.

*Third*, Plaintiffs ignore material evidence in arguing the cullet listed in the Plainfield-A batch formula was not mixed color cullet. Ardagh's lead glass technologist Heidi Root is

uniquely situated to interpret these historical batch records—she maintains them; she has been trained on them; and she uses them for reference. Tr. 932:3-936:23. Ms. Root identified the cullet in the Plainfield-A batch formula as "mixed color cullet" based on her expertise and by corroborating this fact with her predecessor Marv Gridley (who was unavailable for trial), who was chief glass technologist in 1993 and wrote the Plainfield-A batch formula. Tr. 934:2-935:10; 977:22-978:2 (Root). She also explained that when Ardagh uses more than 10% cullet in a batch, some of that is external cullet. Tr. 956:20-957:20. Plaintiffs did not cross-examine Ms. Root on this claim. Instead, Plaintiffs waited until Ms. Root left the stand and asked Dr. Carty about a single batch formula at Milford that used significant quantities of internal cullet. Tr. 1130:3-13 (Carty). Plaintiffs again miss the mark. The Milford batch is consistent with Ms. Root's testimony, *i.e.*, the Milford batch uses greater than 10% cullet and uses external "mixed color" cullet. Moreover, present-day Milford is not representative of 1993 Plainfield because the former uses far greater quantities of cullet in its batches than the latter. Tr. 835:15-836:8 (Baum).

*Fourth,* Plaintiffs argue a reasonable jury *could have found* Ardagh's process or the Ross Batch Calculation was secret, but this is incorrect as a matter of law and fact. Def. Op. Br. at 13-16. Plaintiffs rely on their argument that the confidentiality designations placed on Ardagh documents during litigation are evidence, which this Court rejected. Tr. 890:6-891:10, 1049:16-1051:18. *Fifth,* Ardagh presented evidence that each of the dependent claims is anticipated by Ardagh's prior process. Tr. 1081:24-1084:3 (Carty). Plaintiffs' assertions to the contrary fall flat.

Plaintiffs opposition to the Duckett and Ross references is similarly evasive. Instead of dealing with their merits, Plaintiffs complain Dr. Carty did not spend enough time analyzing them. This is simply not true. After conducting a 24-minute limitation-by-limitation anticipation analysis of Ardagh's prior process (Tr. 1072:12-1090:6), Dr. Carty conducted a similar analysis

for Duckett and Ross. Tr. 1092:21-1094:25. Moreover, Plaintiffs' discussion of the "flint tinge" problem is a diversion. Plaintiffs concede the '737 patent does not disclose a novel use of decolorizers; what is novel is the use of mixed color cullet, which Duckett discloses. *Last*, while Dr. Carty did not expressly reference the *Graham* factors, he addressed and the jury heard testimony regarding the scope and content of the prior art (Tr. 1091:11-1095:23 (Carty), 917:14-925:6 (Ross)), the differences between the claims and the prior art (Tr. 1151:18-1152:4 (Carty)), the industry and level of ordinary skill in the art (*e.g.*, Tr. 1058:19-1065:23 (Carty)), and a lack of objective indicia of nonobviousness, such as a complete lack of commercial success (Tr. 342:20-351:18 (Lame) (no licenses)). Given Plaintiffs' broad infringement theory, no reasonable jury could have found Duckett combined with Ross does not render the '737 patent obvious.

## IV.   ADDING "UNSORTED" TO THE PATENT MEANS SOMETHING, AND THE COURT SHOULD RECONSIDER CLAIM CONSTRUCTION POST-TRIAL.

### A.   Claim Construction Should Be Considered in Post-Trial Motions.

"[T]he procedural law of patents as administered by the Federal Circuit entitles litigants to challenge an objectionable claim construction throughout the proceedings—with a motion for reconsideration, an objection to jury instructions or trial proceedings, or with a motion for JMOL." *Cornell Univ. v. Hewlett-Packard Co.*, 654 F. Supp. 2d 119, 128 (N.D.N.Y. 2009) (Rader, J., Fed. Cir., sitting by designation). "Thus, this court is permitted to, and indeed must, consider [Ardagh's] claim construction arguments on JMOL." *Id.* "An erroneous instruction regarding claim interpretation that affects the jury's decision on infringement is grounds for a new trial." *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1373 (Fed. Cir. 2002). Indeed, district courts have reconsidered claim construction after trial and ordered a new trial. *See, e.g.*, *Johns Hopkins Univ. v. CellPro*, 931 F. Supp. 303, 317 (D. Del. 1996) ("[P]laintiffs should be entitled to a new trial . . . [with] the benefit of a proper claim construction"), *aff'd*, 152 F.3d 1342, 1349,

1358 (Fed. Cir. 1998) (affirming post-verdict claim construction and JMOL decision).

Moreover, reconsidering claim construction is not subject to Rule 59(e) or 60(b)'s standards. "The Federal Circuit . . . appears to suggest that these demanding standards for reconsideration do not apply when a party is seeking reconsideration of a claim-construction opinion." *Wright Asphalt Prods. Co. v. Pelican Refining Co.*, No. H-09-1145, 2012 WL 1936416, at *12 (S.D. Tex. May 29, 2012) (*citing Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) and collecting cases). Thus, the Court may consider *de novo* whether its claim construction is correct after trial.

Plaintiffs contend two cases hold that claim construction cannot be considered in post-trial motions. Pls. Resp. Br. at 20 (*citing Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1320 (Fed. Cir. 2003) and *Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 465 (Fed. Cir 2006)). But those cases concern a different issue: waiver, where a party never raised a claim-construction issue until after trial. Indeed, the *Hewlett-Packard* court stated that "the parties cannot reserve issues of claim construction for the stage of post-trial motions" and cited *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1345-46 (Fed. Cir. 2001). *Hewlett-Packard*, 340 F.3d at 1320; *see Wi-Lan*, 811 F.3d at 465 (reversing JMOL of invalidity in which district court added limitation that defendant agreed to omit during claim construction process). *Interactive Gift Express* is a waiver case, not addressing post-trial motions. 256 F.3d at 1345-46. In post-trial motions, "[o]nly a failure to properly maintain a continued objection to a disputed claim construction will bar this court from reconsidering its construction during JMOL proceedings." *Cornell*, 654 F. Supp. 2d at 128. It cannot be reasonably disputed that the meaning of "unsorted" in "unsorted mixed color cullet" was raised by Ardagh before trial, and indeed, this claim-construction dispute was central to Ardagh's pre-trial arguments. Ardagh therefore did not

10

waive this claim-construction question and the Court should address it.

**B.      "Unsorted … Cullet" Cannot Include Cullet that Has Been Sorted.**

Ardagh's evidence that the prior art used sorted cullet having a mixture of colors, and that

therefore, Plaintiffs' addition of the word "unsorted" to every claim of the '737 patent must have

significance, was unrebutted. Plaintiffs' witnesses agreed that decolorizers and colorizers, Tr.

264:6-11 (Lehman); Tr. 558:24-559:4 (Martin), and mixed-color cullet, Tr. 570:12-15 (Martin),

had been used in making glass bottles prior to the '737 Patent, Tr. 533:15-18.

The examiner thought similarly, finding obvious the originally-filed claims, which did

not contain "unsorted." Only in response to the examiner's rejection and more than a year later—

was "unsorted" added to the patent specification and the claims. Ex. 41 at 3.064 and 3.068. The

addition of "unsorted" was the sole basis argued to avoid the prior art. *Id.* at 3.076-3.079. It has

long been held that "[a]ll the limitations of a claim must be considered meaningful," *Unique*

*Concepts, Inc. v. Brown*, 939 F. 2d 1558, 1562 (Fed. Cir. 1991). The claim construction ignores

that principle and, thus, is erroneous.

**V.      THE '521 PATENT IS UNPATENTABLE AS A MATTER OF LAW**

Plaintiffs conceded at trial that the '521 patent is nothing more than a series of mental

processes and calculations. Tr. 434:3-8, 440:13-441:5, 435:2-436:9, 437:1-5. This directly

contradicts the Court's findings in denying Ardagh's motion for judgment on the pleadings. D.I.

183, n.1. Plaintiffs neither dispute this, nor address the merits of the § 101 analysis. The Court

should address '521 patentability with the benefit of a complete, and undisputed, record.

**VI.     THE DAMAGES VERDICT OVERSTATES THE VALUE OF THE INVENTION**

Plaintiffs argue that the damages award reflects "the annual dollar-per-ton material and

energy savings that Ardagh actually obtained from using mixed color cullet," and "Ardagh itself

had calculated more than $148 million in manufacturing savings from use of the infringing

11

methods." Pls. Resp. Br. at 22-23. These calculations were drawn to the savings from *cullet*–not the incremental savings from using mixed color in the cullet, nor from using more cullet, which were the stated and claimed advantages of the invention. Tr. 644:24-645:1.[4] Plaintiffs have taken a minor improvement patent and used it to claim damages on an entire pre-existing industry that was already using cullet. Tr. 652:15-19. This fails the apportionment requirement.

Plaintiffs wrongly argue that the royalty "reflected the value added by the '737 methods." Pls. Resp. Br. at 24. Dr. Lehman admitted that the '737 patent did not work, could not produce commercially-acceptable glass products, and needed vast (allegedly patentable) improvements in order to be useful. Tr. 236:14-24. For the $50 million royalty to "reflect the value added by the '737 methods," those methods would have to work for their intended purpose.

The proper way to calculate a royalty here is to look to what the parties actually agreed upon in prior negotiations. Plaintiffs rely on their expert's opinion that the prior license offers here were "not probative." Pls. Resp. Br. at 27. But, Mr. Lasinski never accounted for these licenses, he simply disregarded them because they were unconsummated. Tr. 662:24-663:2. That was a legally incorrect conclusion, because license terms proposed between a party-in-suit and third parties are "evidence [that] should carry considerable weight in calculating a reasonable royalty rate." *Unisplay, S.A. v. American Elec. Sign Co., Inc.*, 69 F.3d 512, 519 (Fed. Cir. 1995).

## VII.   ARDAGH'S EQUITABLE DEFENSES BAR PLAINTIFFS' RELIEF

Ardagh's equitable defenses should be considered. *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010) ("In deciding whether to bar the suit on estoppel grounds, the court must consider all evidence relevant to the equities."). Plaintiffs attempt to erect procedural and substantive bars, none of which are supported. *First,* Plaintiffs

---

[4] The same applies to the "CVAM model," Pls. Resp. Br. at 23, which is the Cullet Value Added Model—not Mixed Color Cullet Value Added Model, nor the patent invention. Tr. 656:7-18.

misread Judge Robinson's decision in *TruePosition Inc. v. Andrew Corp.*, 568 F. Supp. 2d 500 (D. Del. 2008), which makes clear "willfulness, alone, is insufficient to preclude the application of equitable defenses" and decries the very argument Plaintiffs make here. *Id.* at 517-518.

*Second*, Plaintiffs argue its infringement threats in 1999 followed by fifteen years of acquiescence or silence cannot give rise to equitable estoppel. That is incorrect and ignores *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010), which held that "[m]isleading 'conduct' may include . . . inaction, or silence." Ardagh established each element of equitable estoppel. Plaintiffs made an infringement threat in 1999 and then acquiesced for fifteen years. Ardagh relied on that silence and, in the meantime, experienced economic and evidentiary prejudice, including that witnesses have died or are unavailable, and documents cannot be found. *See* Def. Op. Br. § IV.H. An infringement threat followed by silence that induces the accused infringer into a decade and a half of sales and investment in the accused product is precisely the conduct giving rise to an equitable estoppel bar. *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, 2017 WL 2588065, at *1 (C.D. Cal. June 13, 2017).

Plaintiffs likewise failed to mitigate damages. Instead of addressing the merits of a failure to mitigate defense—which is a defense in patent litigation, *see IMX, Inc. v. E-Loan, Inc.*, 748 F. Supp. 2d 1354, 1361 (S.D. Fla. 2010)—Plaintiffs suggest only Ardagh could have mitigated Plaintiffs' damages. This misapprehends the defense at a fundamental level. Plaintiffs are obligated to take reasonable efforts to alleviate the effects of their injury—they did not.

## VIII.  CONCLUSION

Ardagh respectfully requests this Court enter judgment of non-infringement of the '737 patent, no willful infringement, invalidity of the '737 patent, and invalidity of the '521 patent; amend its construction of the term "unsorted . . . cullet"; remit Plaintiffs' damages; and bar Plaintiffs relief based on Ardagh's equitable defenses.

Dated:  June 23, 2017

Of Counsel:

John Allcock (*admitted pro hac vice*)
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA  92101-4297
Telephone:  (619) 699-2828
Facsimile:  (619) 764-6628
john.allcock@dlapiper.com

Paul Steadman (*admitted pro hac vice*)
Matthew Satchwell (*admitted pro hac vice*)
Ferlillia V. Roberson (*admitted pro hac vice*)
Steven Reynolds (*admitted pro hac vice*)
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL  60601-1293
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
paul.steadman@dlapiper.com
matthew.satchwell@dlapiper.com
ferlillia.roberson@dlapiper.com
steven.reynolds@dlapiper.com

Stuart E. Pollack (*admitted pro hac vice*)
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY  10020-1104
Telephone:  (212) 335-4964
Facsimile:  (212) 884-8464
stuart.pollack@dlapiper.com

Kathryn Riley Grasso (*admitted pro hac vice*)
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC  20004
Telephone:  (202) 799-4000
Facsimile:  (202) 799-5000
kathryn.riley@dlapiper.com

**DLA PIPER LLP (US)**

  */s/ Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)
1201 North Market Street, Suite 2100
Wilmington, DE  19801-1147
Telephone:  302-468-5700
Facsimile:  302-394-2341
brian.biggs@dlapiper.com

*Attorneys for Defendant and Counterclaim
Plaintiff Saint-Gobain Containers, Inc. d/b/a
Verallia North America, now known as Ardagh
Glass Inc.*

14

Dawn M. Jenkins (*admitted pro hac vice*)
DLA PIPER LLP (US)
1000 Louisiana Street, Suite 2800
Houston, TX  77002-5005
Telephone:  (713) 425-8400
Facsimile:  (713) 425-8401
dawn.jenkins@dlapiper.com

15

## <u>CERTIFICATE OF SERVICE</u>

I, Brian A. Biggs, hereby certify that on this 23rd day of June 2017, that

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW
TRIAL** was electronically filed with the Clerk of the Court using the CM/ECF system, which

will send notification of such filing to the counsel of record.

    */s/ Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)