IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| GREEN MOUNTAIN GLASS LLC & CULCHROME, LLC )<br><br>Plaintiffs, )<br><br>v. )<br><br>SAINT-GOBAIN CONTAINERS, INC., d/b/a VERALLIA NORTH AMERICA )<br><br>Defendant. ) | C.A. No. 14-392-GMS |

## MEMORANDUM

## I. INTRODUCTION[1]

In this patent infringement action, Plaintiffs Green Mountain Glass LLC, and CulChrome, LLC (collectively, "Plaintiffs") allege that Saint-Gobain Containers, Inc., d/b/a/ Verallia North America, now known as "Ardagh" ("Defendant") infringes U.S. Patent Nos. 5,718,737 ("the '737 Patent") and 6,230,521 ("the '521 Patent"). (D.I. 1.)[2] The court held a five-day jury trial in this matter on April 17 through April 21, 2017. (D.I. 268-272.) At trial, Defendant properly moved for judgment as a matter of law ("JMOL") at the end of Plaintiffs' case pursuant to Rule 50(a) of the Federal Rules of Civil Procedure and again at the close of evidence. Tr. 687:8-17; 1200:14-21.[3]

On April 21, 2017, the jury returned a verdict in favor of Plaintiffs on the issue of

---

[1] All docket citations refer to Civil Action No. 14-392-GMS. The abbreviation "Tr." refers to the transcript from the five-day jury trial held on April 17, 2017 through April 21, 2017, (D.I. 268-272.)

[2] On April 11, 2014, Saint-Gobain Containers, Inc. was acquired by Ardagh Holdings USA, Inc. and underwent a name change to Ardagh Glass, Inc. (D.I. 5 at n.1.)

[3] The court declined to rule on the Motions at trial. Tr. 1200:14-21. On October 11, 2016, the court denied Ardagh's Rule 12 Motion for Judgment on the pleadings and found the '521 Patent was not directed to unpatentable subject matter. (D.I. 183); (D.I. 249 at 22.)

infringement with respect to all claims of the '737 Patent. Tr.1374:15-25, 1376:1-25; (D.I. 240.) The jury found that Defendant willfully infringed claims 1, 18, 20, 21, 22, and 24 of the '737 Patent, but that Defendant did not infringe the '521 Patent. *Id.* The jury also found that the claims of the '737 Patent were valid, not obvious, and not anticipated by the prior art. *Id.* The court entered judgment on the verdict on April 26, 2017. (D.I. 242.)

Presently before the court is Defendant's motion for judgment as a matter of law or alternatively for a new trial on the issues of infringement and willful infringement and Plaintiffs' motions for prejudgment interest, attorney's fees, enhanced damages, and, alternatively, a new trial. (D.I. 248); (D.I. 251.) Having considered the entire record in this case, the substantial evidence in the record, the parties' post-trial submissions, and the applicable law, the court will grant Plaintiffs' motion for prejudgment interest and deny all other motions.[4] The court's reasoning follows.

## II. BACKGROUND OF THE TECHNOLOGY

The patents-in-suit relate to a method of recycling batches of mixed colored cullet[5] into amber, green, or flint glass by selectively decolorizing the color green from the mixed colored cullet and then colorizing the mixed colored cullet. '737 Patent. The technology described in the patents-in-suit includes efforts to turn a waste product of glass recycling of unsorted mixed colored glass cullet into a product useful to glass manufacturers. *Id.* At trial, the main focus of both the parties' invalidity and infringement arguments focused on the requirement, appearing in

---

[4] Defendant's motion asserts that it is entitled to judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure or, alternatively, a new trial pursuant to Rule 59. (D.I. 248.) Plaintiffs' motion asserts that it is entitled to prejudgment interest, enhanced damages, attorney's fees, or, alternatively, a new trial. (D.I. 252.)

[5] "Bulk recycled post-consumer glass suitable for melting into recycled glass articles is known as cullet." '737 Patent at 1:32-35.

one form or another in each of the asserted claims, that the colors "of said . . . cullet" are or are not "selectively colorized." *Id.* at Claims 1, 18.

## III. STANDARD OF REVIEW

### A. Renewed JMOL Motions

To prevail on a renewed motion for judgment as a matter of law following a jury trial and verdict, the moving party "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)). "Substantial evidence" is defined as "such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp.*, 732 F.2d at 893.

The court should only grant the motion "if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citing *Wittekamp v. Gulf Western Inc.*, 991 F.2d 1137, 1141 (3d Cir. 1993)). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube*, 4 F.3d at 1166 (citing *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992)). Rather, the court must resolve all conflicts of evidence in favor of the non-movant. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991); *Perkin-Elmer Corp.*, 732 F.2d at 893.

"The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube*, 4 F.3d at 1166 (quoting *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978)).

## B.     New Trial

Pursuant to Federal Rule of Civil Procedure 59, a court may grant a new trial "for any of the reasons for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The decision to grant or deny a new trial is within the sound discretion of the trial court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). In making this determination, the trial judge should consider the overall setting of the trial, the character of the evidence, and the complexity or simplicity of the legal principles which the jury had to apply to the facts. *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 89 (3d Cir. 1960). Unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner. *Allied Chem. Corp.*, 449 U.S. at 36. A court should grant a new trial in a jury case, however, only if "the verdict was against the weight of the evidence . . . [and] a miscarriage of justice would result if the verdict were to stand." *Consol. Rail Corp.*, 926 F.2d at 1352.

Similarly, Federal Rule of Civil Procedure 60 permits a court to relieve a party from final judgment and even grant a new trial due to "fraud . . . , misrepresentation, or other misconduct by an adverse party." Fed. R. Civ. P. 60(b)(3); *see Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 384-85 (3d Cir. 1996). In order to prevail on a Rule 60 motion, the movant must show that the adverse party engaged in fraud or other misconduct, and this conduct prevented the movant from

4

fully and fairly presenting his case. *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983). Additionally, the movant must demonstrate that the fraud or misrepresentation was material to the outcome of the case. *Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73 (3d Cir. 1985). Fraud or misrepresentation must be proved by clear and convincing evidence. *See Brown v. Pennsylvania R.R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960).

## IV.   DISCUSSION

Having considered the substantial evidence in the record, the parties' post-trial submissions, and the applicable law, the court will deny all of Defendant's motions. The court will deny Plaintiffs' motions for enhanced damages, attorney's fees, and a new trial and grant Plaintiffs' motion for prejudgment interest. The court's reasoning follows.

### A.   Infringement

First, Defendant moves for judgment as a matter of law or, alternatively, a new trial on infringement. (D.I. 249.) Defendant's sole challenge to the jury's infringement verdict is that Plaintiffs "failed to prove that it 'selectively decolorized' one of the colors of the unsorted mixed color cullet, which is a required element of every asserted claim." (D.I. 249 at 3.)[6] Both of the asserted independent claims, 1 and 18, require "selectively" decolorizing and enhancing "at least one of the colors of said unsorted mixed color glass cullet." '737 Patent at Claims 1, 18. Thus, to infringe, Defendant must use colorizers or decolorizers in a selective way to remove and enhance only a particular color cullet. (D.I. 249 at 3.)   Defendant argues that there is no evidence in the record that its glassmaking process selectively uses decolorizers or colorizers to act on the cullet.

---

[6] Plaintiffs' infringement expert interpreted "selectively" to mean "decolorizing a specific or a selective undesired color that the glassmaker wants to decolorize." Tr. 534:22-25.

5

*Id.* at 3-4. Specifically, Defendant argues that the evidence only shows that it used the same colorizers and decolorizers that are well-known in the prior art, that these colorizers and decolorizers acted on all colors in all materials in the batch as a whole, and were not selective. Tr. 263:4-264; 265:10-266.

Plaintiffs assert that they presented substantial evidence "through exhibits, fact, and expert testimony," which provided the jury reasonable grounds to find that Defendant infringed all asserted claims of the '737 Patent. (D.I. 260 at 3-4.) The court agrees. Plaintiffs' expert, Dr. Steve Martin, testified extensively as to Defendant's infringement finding that "all of the steps [of the independent claims asserted] have been practiced by [Defendant]'s accused methods." (D.I. 260 at 4); Tr. 400:24-433; 424:2-3.[7] While Dr. Martin's testimony alone provided a sufficient basis for a reasonable jury to find Defendant infringed the '737 Patent, Plaintiffs submitted considerable additional evidence. (D.I. 260 at 4.) For example, Plaintiffs' technical director, Dr. Lehman, testified that Defendant's Manager of Glass Technology told him they used mixed color cullet with colorizers *and* decolorizers. Tr. 201:1-9. At trial, Plaintiffs presented testimony from Defendant's corporate head, James Keener, who testified that "[Defendant] practiced every limitation of the '737 Patent's independent claims." Tr. 711:22-712:20. The jury also heard evidence about an internal email stating that "[Defendant] would not seek a license on any color control technology because [they] are already" using the technology. DX-134; (D.I. 260 at 4.) Lastly, the court recognized at trial that "asserting a defense of anticipation based on Ardagh's prior public use could seriously undermine the infringement

---

[7] More specifically, Dr. Martin testified that "all of the accused methods . . . infringe claim 1," "all of their accused batches also infringe claim 20," "all of their accused amber batches in[fringe] claim 21," "all of the green batches . . . containing cobalt infringe claim 22," and "batches containing manganese for the amber batches and . . . cobalt for the green batches infringe claim 24." (D.I. 260 at 4.)

position in the eyes of the jury." Tr. 762:10-15. Despite this warning, Defendant proceeded with their defense. Accordingly, a reasonable jury could have found infringement based on all the aforementioned evidence.

Defendant argues, alternatively, that the court should grant a new trial on infringement because "Plaintiffs' counsel questioned [Defendant]'s lay witness Mr. Keener on the claim elements and concluded with [the question] 'you have just proven infringement [....] correct?'" (D.I. 249 at 4); Tr. 711:22-712:22. Despite the court's admonishment of Plaintiffs' counsel and its curative instruction, Plaintiffs' counsel repeated this statement in his closing. *Id.*; Tr. 713:5-714:9, 1289:18-20. While counsel behaved inappropriately and unprofessionally at this and other times during the trial, after much thought the court believes its curative instructions sufficed to adequately ameliorate the harm caused by counsel. *See InterDigital Commc'ns, Inc. v. ZTE Corp.*, 2016 WL 1073229 at *5 (D. Del. Mar. 18, 2016). At the time the question was asked, the court told the jury that they were "to disregard [counsel's] question and his comment. It was inappropriate. He has been told about it. And he will not repeat the offense again. But I am directing you to disregard the comment, please." Tr. 714:2-7.[8] In the final jury instructions the court reiterated its point and instructed the jury that they "must completely ignore" all the things during trial they were ordered to disregard and that they must "not speculate about" what a witness or exhibit may have shown because they are not evidence. Tr. 1230:15-23.[9]

---

[8] During trial, the court advised Plaintiffs' lead counsel that his behavior was inappropriate. Tr. 713:1-714:1. Eventually, the court summoned counsel to sidebar in order to avoid "chastis[ing] [counsel] in front of the jurors." Tr. 713:20-21.

[9] During one part of jury instructions the court explained that "[d]uring the trial I may not have let you hear the answers to some of the questions that the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are of course bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it

For these reasons, the court will deny Defendant's motion for judgment as a matter of law or, alternatively, for a new trial on the issue of infringement.

## B. Willful Infringement

Next, Defendant moves for judgment as a matter of law or, alternatively, a new trial on willful infringement. (D.I. 249.) Defendant asserts that Plaintiffs failed to prove willful infringement of the '737 Patent because (1) its glassmaking process predates the '737 Patent's priority date; (2) it did not use unsorted cullet; and (3) Plaintiffs' actions demonstrate that it did not willfully infringe the '737 Patent. (D.I. 249 at 5.)  Generally, a finding of willful infringement should be reserved for "egregious cases of misconduct beyond typical infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016). Willfulness "is a classical jury question of intent. When trial is had to a jury, the issue should be decided by the jury." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). A willful infringer is one "who intentionally infringes another's patents—with no doubts about its validity or any notion of a defense—for no other purpose other than to steal the patentee's business." *Halo Elecs., Inc.*, 126 S. Ct. at 1926.

### 1. The Priority Date & Mixed Cullet

Defendant asserts that because their glassmaking process predated the '737 Patent's priority date, it reasonably believed it could not be liable for infringement. (D.I. 249 at 5.) Defendant further contends that testimony by their former Senior Vice President for Supply Chain, Mr. Rhea, establishes that Defendant's glassmaking process had not materially changed since at least

---

here, and nothing else." Tr. 1230: 12-21.

1986, and the process used *mixed* color cullet prior to Plaintiffs' patent. *Id.*; Tr. 768:1-11, 771:20-773:13. At his deposition, however, Mr. Rhea also stated that he "can't recall [to] any degree ever reading [the '737 patent]," and was not "aware of any analysis that Ardagh did internally to determine whether or not it was using technology from CulChrome." (D.I. 260 at 10); (D.I. 252 at 10.) Defendant's Senior Vice President of Technical Services, Roger Erb, further said he would be "impress[ed]" if Plaintiffs "could take 50% Green Glass and 50% Amber Glass and successfully make Amber Glass" at the time. (D.I. 260 at 8); (JTX-5.)

## 2. The Unsorted Cullet

Next, Defendant argues that it believed it was not liable for patent infringement because it does not and has not used *unsorted* cullet. (D.I. 249 at 7.) At trial, the evidence from both Defendant's witnesses and third parties established that Defendant used *sorted* mixed color cullet before Plaintiffs' patent. *Id.*[10] Defendant, however, introduced no evidence that anyone "act[ed] on the basis of the defense [of using only sorted cullet] or was even aware of it." (D.I. 260 at 11); *Halo Elecs., Inc.*, 136 S. Ct. at 1933. Specifically, Defendant's assertion that it could not be liable because it only used "sorted" cullet contradicts its prior assertion that it could not be liable because it had been using "mixed color cullet" prior to issuance of the '737 Patent. (D.I. 249 at 5-7.)

## 3. Plaintiffs' Actions & Documents

Among other things, the jury heard evidence on (1) Defendant's deliberate copying,

---

[10] Mr. Rhea testified that as far back as 1986, Ardagh had separate bins of cullet for use in each color of glass bottle, and that, for example, the amber cullet for amber bottles was predominately amber with small amounts of other colors. Tr. 788:5-789:2. Similarly, Ardagh's employee, Mr. Baum, testified that he only worked with sorted mixed color cullet. Tr. 831:9-19. Finally, Ardagh's cullet suppliers testified they only sold sorted cullet to Ardagh. Tr. 854:7-13.

including that, a mere eight days after learning about the patent, Defendant drafted a secret dossier in which it sought information regarding nineteen different aspects about Plaintiffs' technology; (2) Defendant's failure to investigate the scope of the patent or form a good faith belief that it was invalid or not infringed; (3) Defendant's failure to take remedial action, including continued post-suit infringement; and (4) Defendant's attempts to conceal its infringement, including a letter sent to Plaintiffs denying infringement pre-suit and a letter post-suit denying it used "mixed color cullet." Tr. 593:11-15. After considering the evidence, the jury, under a heightened willfulness instruction, found that "Ardagh was especially worthy of punishment." Tr. at 1250:23-24.[11]

Other than presenting conflicting testimony from their own experts, Defendant has not demonstrated that a reasonable jury could *not* have found that it willfully infringed the patent. It is not the court's role to second guess the credibility determinations of the jury. *See SIBIA Neuroscis. Inc., v. Cadus Pharms.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000). For these reasons, the court will deny Defendant's motion for judgment as a matter of law or, alternatively, for a new trial on the issue of willful infringement. (D.I. 272 at 218:1-22.)

## C.    Invalidity of '737 Patent Claims

### 1.    Anticipation

At trial, Defendant asserted that three separate references (hereinafter "the 1995 Process," "Duckett," and "Ross") anticipate the asserted claims of the '737 patent-in-suit. Proving that a

---

[11] Defendant argues that as early as February 8, 1999, Plaintiffs expressed their belief that everyone using mixed color cullet would need to license the '737 Patent. (D.I. 249, Ex. 6.) Defendant informed Plaintiffs that it could not be liable to Plaintiffs because it had used mixed color cullet years prior to the issuance of Plaintiffs' patent. (D.I. 249, Ex. 3.)   Plaintiffs argue that no actions were taken to absolve Ardagh's willful conduct and that while Ardagh pressed each of these issues at trial, the jury still found Ardagh "acted willfully" and "was especially worthy of punishment." (D.I. 260 at 12.)

patent is invalid based on anticipation "requires that the four corners of a *single*, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *EMC Corp., et al. v. Zerto, Inc.*, 2016 WL 1291757 at *7 (D. Del. Mar. 31, 2016); *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). The central point of dispute between the parties is whether each of these prior art references anticipates the "unsorted mixed color cullet" requirement that appears in the '737 Patent. (D.I. 249 at 10.) Plaintiffs aver that not one of the three references anticipate the patents-in-suit. (D.I. 260 at 12.) The court agrees, and, for the reasons that follow, finds that the evidence at trial was sufficient to support the jury's verdict of no invalidity by anticipation with respect to each of the references.

### i. The 1995 Process

Defendant asserts that their pre-1995 glassmaking process used mixed color cullet colorizers, and decolorizers. (D.I. 249 at 9.) Specifically, Defendant asserts the result of the broad construction of unsorted mixed color cullet is that their pre-1995 process anticipates the '737 Patent. (D.I. 249 at 11.) Plaintiffs argue that the 1995 Process cannot anticipate the '737 Patent because "trial proved that Ardagh's alleged invalidating reference, DX-16, did not anticipate the '737 [P]atent." (D.I. 260 at 13.) Defendant did not, and cannot, prove anticipation for six distinct reasons.

First, Defendant's expert, Dr. Carty, admitted on direct examination that he predicated his anticipation opinions on ignoring the "selectivity limitation." Tr. 1073:4-114. Second, Dr. Cartly admitted that DX-16 does not explicitly disclose mixed color cullet. Tr. 1127:18-1129:22. Third,

more than sufficient evidence existed for a reasonable jury to reject Dr. Carty's assertion that the "cullet" listed in DX-16 was mixed color cullet. For example, Dr. Carty admitted that as of 1994 Defendant's trade association confirmed that mixed color cullet in container manufacturing could not be used. Tr. 1125:6-21. Fourth, Dr. Carty showed batch records containing greater than 50 percent internal cullet added to the batch. Tr. 1130:3-13. Fifth, the jury instructions properly instructed that an anticipating reference must be "reasonably accessible to the public," or "not subsequently abandoned, suppressed, or concealed." Tr. 1254:11-1255:19; (D.I. 260 at 16.) Sixth, Defendant introduced no evidence that the pre-1995 process anticipated dependent claim 20, which adds the limitation that the "mixed color cullet" comprise flint, green, and amber glass. *Id.*

### ii. Duckett

Defendant's post-trial brief asserts that Duckett discloses the use of colorizers with mixed color cullet to make amber and green bottles. (D.I. 249 at 16.) Specifically, Defendant argues that Duckett disclosed selective colorizing in 1979, including "selenium and cobalt oxide and manganese as the decolorizing agents [to] compensate for iron and flint glass." *Id.*; Tr. 1092:3-20; Tr. 1095:12-16. Thus, Defendant asserts Duckett anticipates claims 1 and 18 as a matter of law in addition to each of the dependent claims, claim 20, 21, 22, and 24. (D.I. 249 at 16-17.)

Plaintiffs assert that Defendant's invalidity defenses regarding the Ducket and Ross references, were so meritless that Defendant did not even mention them in their opening statement or closing argument. (D.I. 260 at 18.) Additionally, Plaintiffs point out that Defendant's expert, Dr. Carty, only testified about Duckett on direct for three minutes. (D.I. 260 at 18); Tr. 1090:12-1094:2. Dr. Carty gave an analysis of claim 18 and was asked "[i]f we march

12

through the rest of the limitations for claim 18, do you find any of limitation that has not been disclosed in Duckett for claim 18?" to which he responded, "No, I do not." Tr. 1093:14-17. Such testimony is insufficient as a matter of law to prove anticipation. *See Schumer v. Lab Computer Sys., Inc.*, 308 F.3d 1304, 1315–16 (Fed. Cir. 2002) ("testimony concerning anticipation . . . must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference."); *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1325 (Fed. Cir. 2005) (affirming JMOL denial where "conclusory" testimony "failed to analyze and explain the claim language and which components of the prior art embodied each element of the asserted claims"). On cross examination, Dr. Carty explained how Duckett did not invalidate the '737 patent because it merely disclosed how to solve the so-called "flint tinge problem." Tr. at 1149:25-1150:23. The '737 Patent itself, however, disclosed and distinguished the "flint tinge problem" as being unrelated to the problem and methods disclosed in the '737 Patent. (D.I. 260 at 18-19); Tr. at 1149:25-1150:23.

Because Defendant failed to present sufficient evidence at trial to support a conclusion that any of the three references anticipate the '737 Patent, the court concludes that the evidence at trial was sufficient to support a verdict that the '737 Patent was not anticipated.

### 2. Obviousness

35 U.S.C. § 103 provides, in pertinent part, that a patent may not be obtained "if the differences between the subject matter sought to be patented and the prior art such that the subject matter as a whole would have been obvious to a person having ordinary skill in the art." 35 U.S.C. § 103. Obviousness is a question of law that is predicated upon several factual inquiries. *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997).

Specifically, the trier of fact must consider: (1) the scope and content of the prior art; (2) the differences between the claimed subject matter and the prior art; (3) the level of ordinary skill in the art; and (4) secondary considerations of non-obviousness such as commercial success, long felt but unsolved need, failure of others, and acquiescence of others in the industry that the patent is valid, and unexpected results. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966) (the "*Graham* Factors"). The Supreme Court in *KSR* reaffirmed that the *Graham* Factors "continue to define the inquiry that controls." *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 405 (2007).

Defendant asserts that when combined with Duckett and the knowledge of a skilled artisan, the Ross Batch Calculation renders the '737 Patent obvious. (D.I. 249 at 17.) At trial, Mr. Ross, an independent consultant in glass manufacturing, testified that his 1994 batch calculation for Coors proved that he helped Coors make glass including mixed cullet, decolorizers, and colorizers, including salt cake, graphite, and melite. Tr. 917:14-25-918:1-25. Defendant asserts that while Plaintiffs contend that the Ross Batch Calculations were secret, Mr. Ross testified that they were not confidential when he shared them with Coors. (D.I. 249 at 17); Tr. 920:16-18. In response, Plaintiffs argue that there was no evidence regarding a motivation to combine Duckett and the Ross Batch Calculation. (D.I. 260 at 18-19.) Additionally, Plaintiffs assert that Dr. Carty's testimony regarding the alleged obviousness in light of the combination of Duckett, Ross, and the knowledge of a POSA was equally deficient as a matter of law because he did not analyze any of the four *Graham* Factors. (D.I. 260 at 19); *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012) (requiring examination of all four factors). No additional evidence showed any motivation to combine Duckett and Ross, or that there was a reasonable expectation of success in doing so. (D.I. 260 at 19.) As previously

14

discussed, the evidence presented regarding Duckett and Ross at trial was conclusory, and a reasonable jury could have found that the patent was not obvious.

### D. Defendant's Motion for Claim Construction Reconsideration

In its motion, Defendant asks the court to revisit its April 12, 2017 claim construction order regarding "unsorted mixed color cullet" if the court does not grant JMOL of non-infringement or invalidity. (D.I. 249 at 18.) Specifically, Defendant argues that "[s]ubstantial *extrinsic* trial evidence undermines the Plaintiffs' construction of 'unsorted mixed color cullet' that was proposed and accepted on the eve of trial." *Id.* "[I]t is too late at the JMOL stage to argue for or adopt a new and more detailed interpretation of the claim language and test the jury verdict by that new and more detailed interpretation." *Hewlett–Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1320–21 (Fed. Cir. 2003); *see Avid Techs., Inc. v. Harmonic, Inc.*, 2014 WL 7206301 at *3 (D. Del. Dec. 17, 2014). "At the JMOL stage, the question for the trial court is limited to whether substantial evidence supports the jury's verdict under the issued construction." *Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 465 (Fed. Cir. 2016). The court will not now impose additional limitations on the meaning of "unsorted mixed color cullet" and test the jury's verdict against that new construction. To the extent that Defendant argues the jury's conclusions were still not supported by substantial evidence, the court finds that there is ample evidence in the record that could support the court's prior construction of the term "unsorted mixed color glass cullet" to mean "broken pieces of glass of mixed color and types." (D.I. 223.)[12]

### E. Defendant's Invalidity Motion under 35 U.S.C. § 101

---

[12] After a thorough review of the court's Claim Construction Order (D.I. 223), the court has determined that the Order provided the necessary and appropriate reasons for its construction.

In its motion, Defendant asks that the court reconsider its holding as a matter of law "that the '521 patent falls within the § 101 categories of patentable subject matter." (D.I. 183 at n.1); (D.I. 249 at 22); (D.I. 260 at 20.) When Defendant moved to have the issue reconsidered by the jury at trial the court responded that "as a matter of law, this is patentable subject matter. That is the end of that." Tr. 992:6-8. While Defendant now claims the analysis turns on subsidiary facts, it previously represented to the court that there are no such disputes here. (D.I. 139 at 9.) The court, therefore, need not reconsider this issue and Defendant's motion for reconsideration pursuant to 35 U.S.C. § 101.

### F. Defendant's Motion for Equitable Estoppel

Defendant contends that equitable estoppel and Plaintiffs' alleged failure to mitigate bar recovery. (D.I. 249 at 28.) In a patent case, equitable estoppel contains three elements: "(1) the patentee, through misleading conduct, led the alleged infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer would be materially prejudiced if the patentee were permitted to proceed with its charge of infringement." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010).

Defendant argues it relied on Plaintiffs' silence from 2003-2011, which allegedly suggested Plaintiffs were simply trying to sell Defendant something it did not own. (D.I. 249 at 29.) Defendant also asserts that Plaintiffs failed to mitigate damages by waiting over fifteen years to file suit or putting Defendant on notice that Plaintiffs believed it infringed the '737 Patent. *Id.* at 30. Defendant believes the delay resulted in severe prejudice at trial because many of the documents, witnesses, and defenses previously available to Defendant were unusable. *Id.*

Plaintiffs assert that Defendant's equitable defenses are meritless and that "failure to mitigate" is not a cognizable defense to reasonable royalty damages for patent infringement. *Romag Fasteners, Inc. v. Fossil, Inc.*, 29 F. Supp. 3d 85, 103 (D. Conn. 2014). Plaintiffs also argue its "damages are based on [Defendant]'s use of [Plaintiffs'] patented technology, the only party that could have mitigated the damages owed by [Defendant] was [Defendant] itself—by ceasing to use that technology, designing around it, or taking a license." (D.I. 260 at 29.) Even if Defendant could establish all three equitable estoppel elements, the defense cannot bar Plaintiffs' recovery in light of the "other evidence and facts respecting the equities of the parties." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1043 (Fed. Cir. 1992) (*en banc*). The court agrees. Because "[a] finding of egregious conduct above willful infringement[] typically justifies preclusion of an equitable defense[,]" the court will deny Defendant's Motion. *TruePosition Inc. v. Andrew Corp.*, 568 F. Supp. 2d 500, 517 (D. Del. 2008).

### G. Defendant's Motion for Remittitur on Damages and a New Trial

Defendant argues that damages should be remitted or that it should receive a new trial. (D.I. 249 at 28.) Specifically, Defendant argues that Plaintiffs failed to apportion: (1) the cost savings of using cullet to arrive at the incremental value of the patent; and (2) the asserted damages to account for other unpatented features, benefits, and methods related to the accused Defendant processes. *Id.* at 23. "A jury award of damages is reviewed by [the district court] for substantial evidence. That award is entitled to deference." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 426 F. Supp. 2d 211, 214 (D. Del. 2006) (citation omitted). "The Federal Circuit has stated that the jury's findings must be upheld unless 'the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or

guesswork.'" *Id.* at 215. A remittitur is only proper where the court finds that the jury verdict is excessive or not supported by sufficient evidence. *See Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 354 (3d Cir. 2001). A new trial is warranted only "where 'a miscarriage of justice would result if the verdict were to stand,' the verdict 'cries out to be overturned,' or where the verdict 'shocks our conscience.'" *Lucent Techs., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 181, 251 (D. Del. 2001) (citation omitted).

Here, the jury's verdict demonstrates that it did not fully agree with the damages or royalty numbers proposed by either party. *See Energy Transp. Grp. v. Sonic Innovations, et al.*, 2011 WL 2222066 at *21 (D. Del. June 7, 2011) (where parties presented conflicting expert testimony and the jury was able to accept or reject either party's evidence, the court did not disturb the jury's determinations). Defendant proposed a royalty base of 4,192,817 tons of mixed color cullet, with a royalty rate of $3 per ton of mixed color cullet, which would have yielded damages of $12.5 million. Tr. At 1188:1-3. Plaintiffs proposed a royalty base of 4,192,815 tons of mixed color cullet, with a royalty rate of $25 per ton of mixed color cullet, which would have yielded damages of approximately $104 million. Tr. 663:25-664:1. Even one draft license admitted into evidence by Defendant, the 1995 "Allwaste Agreement," included a $15 royalty "for each ton of three-mix cullet processed by a manufacturer." *Id.* at 21-22. After weighing the evidence, the jury awarded $50,313,779.04, which equated to an effective royalty rate of approximately $12 per ton. (D.I. 260 at 22.)

In light of the record, the court does not find that the jury's verdict is excessive and finds that substantial evidence supports the jury's damages verdict. (D.I. 260 at 21.) The court, therefore, will not allow remittitur at this time and finds that no basis exists for a new trial.

18

## H.     Green Mountain's Motions

Plaintiffs filed four post-trial motions that remain pending: A motion for prejudgment interest, enhanced damages, attorney's fees, and a conditional motion for new trial. (D.I. 251.) The court will deny the motions for enhanced damages and attorney's fees and grant the motion for prejudgment interest. The court will deny Plaintiffs' conditional motion for a new trial without ruling on its substance.[13]

### 1. Prejudgment Interest

Plaintiffs seek an award of prejudgment interest pursuant to 35 U.S.C. § 284. Specifically, Plaintiffs request prejudgment interest from the date of infringement to the date of final judgment at the prime rate, compounded quarterly. (D.I. 252 at 4.) According to Plaintiffs' damages expert, using the prime compounded quarterly rate adds $10,347,899.18 to the verdict through June 30, 2017, and a daily rate of $6,479.00 from July 1 through September 30, 2017. *Id.* at 5.[14]

"As a general matter, prejudgment interest should ordinarily be awarded in patent cases to provide patent owners with complete compensation." *LG Display Co. v. AU Optronics Corp.*, 722 F. Supp. 2d 466, 475 (D. Del. 2010). "'The Federal Circuit has given district courts great discretion' when determining the applicable interest rate for an award of prejudgment interest." *See Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991); *IPPV*

---

[13] In its motion, Plaintiffs argue that if Defendant is awarded relief on any issue, they are entitled to a conditional new trial under Federal Rules of Civil Procedure 50 and 59 regarding Defendant's infringement of U.S. Patent No. 6,230,521. (D.I. 252 at 27.) Because the court did not award any relief to Defendant, Plaintiffs' Conditional Motion for New Trial is moot.

[14] Plaintiffs' damages expert, Michael J. Lasinski, offered two time periods for his calculations. (D.I. 255.) The first time period takes into account Defendant's purchased non-flint cullet during the period of March 28, 2008 through March 3, 2015, which is approximately 4,192,815 tons of non-flint cullet during this period. *Id.*; (D.I. 259.) The calculations pertaining to the first time period calculate prejudgment interest through June 30, 2017, Quarter 2 of 2017. *Id.* The second time period runs from July 1, 2017 is the daily interest rate for each day until entry of the final verdict.

*Enterprises, LLC v. EchoStar Comm'n Corp.*, 2003 WL 723260 at *3 (D. Del. Feb. 27, 2003) (citation omitted). "Courts have recognized that the prime rate best compensate[s] a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is 'a better measure of the harm suffered as a result of the loss of the use of money over time.'" *IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 227 (D. Del. 2007) (citing *Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 720–21 (D. Del. 1993), *aff'd*, 16 F.3d 421 (Fed. Cir. 1993)); *see Idenix Pharms. LLC v. Gilead Sciences, Inc.*, 271 F. Supp. 3d 694, 705 (2017).

The Defendant opposes the motion for prejudgment interest, arguing that (1) Plaintiffs' undue delay in instituting suit warrants denial of prejudgment interest; and (2) if granted, the court should apply the Treasury Bill ("T-Bill") rate. (D.I. 257 at 27-28.) "In cases of patent infringement, 'prejudgment interest should be awarded [under 35 U.S.C. § 284] absent some justification for withholding such an award.'" *Tristrata Tech., Inc. v. Mary Kay, Inc.*, 423 F. Supp. 2d 456, 471 (D. Del. 2006) (citing *GM Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983)). Such justification may include undue delay in bringing suit. *See id.* Unless delay causes prejudice to the defendant, however, it does not support a denial of prejudgment interest. *Id.*; *See also Lummus Industries. Inc., v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988). Here Defendant has neither proven Plaintiffs unduly delayed in filing suit or that they have been prejudiced. Defendant argues that because it is undisputed that Plaintiffs were aware of their possible claim for infringement as early as 1999, but did nothing to bring suit until 2014, the prejudgment interest should be denied. (D.I. 257 at 27.) The parties dispute when Plaintiffs learned of the infringement. This dispute, in light of the record, undermines Defendant's undue

delay argument.

Next, the court must determine whether to award prejudgment interest at the prime rate or the one-year U.S. Treasury Bill ("T-Bill") rate. Defendant argues that if the court awards prejudgment interest, it should apply the T-Bill rate "because plaintiffs never produced evidence (1) that they borrowed at a higher rate; (2) what that rate was; or (3) that there was any causal connection between borrowing and losing the use of the money due to [Defendant]'s infringement." (D.I. 257 at 27-28.); *Schering Corp. v. Precision-Cosmet Co., Inc.*, 614 F. Supp. 1368, 1384 (D. Del. 1985).

The court disagrees with Defendant's argument that the Plaintiffs provide no justification for compounding quarterly. (D.I. 257 at 28.) Plaintiffs submitted the declaration of Anthony Lame confirming that it was forced to borrow at a rate of 9% during the damages period, which would add more to the verdict than the compounded quarterly rate. (D.I. 262 at 2.)[15] Therefore, Plaintiffs' motion for prejudgment interest will be granted in accordance with the compounding quarterly calculations set forth by Michael Lasinski, Plaintiffs' damages expert, in his declarations. Accordingly, the court will order Defendant to pay prejudgment interest at the prime rate, compounded quarterly of $10,347,899.18 as of June 30, 2017, plus 6,479.00 (daily interest rate) times 251 (days since June 30, 2017), for a total of $11,974,128.18.

### 2. Enhanced Damages

Next, Plaintiffs seek treble damages for Defendant's willful infringement of the '737 Patent. (D.I. 252 at 5.) It is within the court's discretion to award enhanced damages under 35 U.S.C.

---

[15] The 9% borrowing rate would add $32,361,026.09 to the verdict through June 30, 2017 on a compounded quarterly basis, and a daily rate of $19,570.73 from July 1 through September 30, 2017. (D.I. 262 at 2); (D.I. 255.)

§284. *Halo Elecs., Inc.*, 136 S. Ct. at 1934. The court takes into account the particular circumstances of each case, while recognizing that enhanced damages "should generally be reserved for egregious cases typified by willful misconduct." *Id.* When the court considers whether to enhance damages based on willfulness, it turns to the factors set forth in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992), *overruled on other grounds by Markman v. Westview Inst. Inc.*, 52 F.2d 967 (Fed. Cir. 1995): (1) deliberate copying; (2) defendant's investigation and good faith-belief of invalidity or non-infringement; (3) litigation behavior; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of the misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) attempted concealment of the misconduct. *Id.* While these factors are designed to guide the analysis, "[t]he paramount determination in deciding to grant enhancement damages for patent infringement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Id.* at 826. "The court must consider factors that render defendant's conduct more culpable, as well as factors that are mitigating or ameliorating." *Id.* The court will analyze each *Read* Factor in turn.

The first *Read* Factor is "whether the infringer deliberately copied the ideas or design of another." As to this factor, Plaintiffs contend that Defendant's deliberate copying and misuse of Plaintiffs' invention presents a quintessential basis to enhance damages. (D.I. 252 at 14.) Defendant counters that it did not copy the patent at issue because it has been making glass using mixed color cullet long before the '737 Patent. (D.I. 257 at 2.) While substantial evidence was presented at trial on both sides of the dispute, the jury presumably found the facts to be more consistent with Plaintiffs' characterization than Defendant's. The court, therefore, concludes that

the "deliberate copying" factor must, based on the jury verdict, be deemed to favor enhancement.

Turning to the second *Read* Factor—"whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed"—the record shows that Defendant did not have a "good faith belief" that the '737 Patent was invalid or not infringed. On November 25, 1998, Mr. Rhea told Plaintiffs that it "had been working with mixed cullet for 'five or six years' . . . " Tr. 265:10-266:10. Defendant, however, maintains that it continuously told Plaintiffs that their patent could not cover Defendant's "long-standing processes." (D.I. 257 at 6.) The jury, however, returned a verdict finding willful infringement "especially worthy of punishment." Tr. 1250:21-24, 1375: 8-11. This factor, therefore, weighs in favor of enhancement.

Defendant's "behavior as a party to the litigation," the next *Read* Factor, disfavors enhancement. Plaintiffs assert that Defendant's counsel "conceded that Ms. Flight's testimony was 'terrible,' but then falsely told the jury, '[t]hat testimony does not have anything to do with any issue you have to decide in this case.'" (D.I. 252 at 12); Tr. 1325:16-23.[16] Defendant, however, asserts that Plaintiffs inappropriately suggest that its counsel lied during closing arguments, and that Ms. Flight's deposition testimony was and remains irrelevant to infringement, invalidity, and willful infringement since she was not an officer who had any

---

[16] At trial, Ms. Flight's testimony was presented in the format of a video deposition. Tr. 284:3-16. During her deposition, counsel walked Ms. Flight through an exhibit that she prepared for a presentation in 2010. Tr. 285:21-286:2. Throughout the deposition, Ms. Flight continuously explained that she did not remember what she meant by the specifics of the various documents and emails written other than what the documents stated. Tr. 292:3-294:10. Ms. Flight was then asked about a declaration she submitted in August 2014. Tr. 294: 11-16. She testified that she did not personally write the content of the declaration and did not remember who did. Tr. 294:17-21. Counsel asked Ms. Flight "if you were asked to sign this declaration today, you couldn't do so with Exhibit A attached to it; right?" Tr. 294:22-24. Ms. Flight responded "I don't know. If I were to sign a declaration today, it would say something completely different than what this declaration said." Tr. 294:25-295:2. When asked what it would say today, Ms. Flight responded "I don't know." Tr. 295:3-3. Counsel next asked "[w]hat we do know is something completely different than what it says here; right? That's what you just testified to" and Ms. Flight responded that "[i]t would have to be different than what it says here." Tr. 295:5-9.

authority to decide how Defendant made glass. (D.I. 257 at 9.) Ms. Flight, however, admitted that if she were "to sign a declaration today, it would say something completely different than what th[e] declaration [regarding mixed color cullet] said" when she signed it. Tr. 294:17-295:2. In sum, the litigation conduct factor does not favor enhancement.

Defendant is a large and healthy business entity. This fact might, as a general matter, support enhancement. Under the circumstances here, however, these considerations do not merit any weight. Plaintiffs agreed with Defendant to exclude reference to Defendant's size and financial condition in the parties' proposed pre-trial order. (D.I. 212 at 4, Schedule N1 ¶¶ 3-4); (D.I. 257 at 10.) As such, there was no evidence presented that Ardagh "exploited its size and wealth" over Plaintiffs in refusing to license or use the '737 Patent. (D.I. 252 at 13.) Therefore, this factor is neutral.

The next *Read* Factor, "closeness of the case," is neutral. Defendant prevailed at trial on non-infringement on one of the two patents at issue. (D.I. 257 at 10.) The court denied Plaintiffs' request for summary judgment on all claims and defenses. *Id.*; (D.I. 211.) Plaintiffs, however, prevailed at trial on willful infringement of the '737 Patent as to all claims. (D.I. 252 at 14.) The jury's deliberation was relatively brief—approximately three hours. Nevertheless, the case presented a number of close calls for the court. *See* Tr. 763:22-764:19 (discussing claim construction), 1243:6-11, 1359:7-1360:3, 1373:21; (D.I. 183.)[17] The court, however, finds this factor to be neutral as there is evidence that could weigh in favor of each side.

The next two factors—the "duration" of the infringer's "misconduct" and "[r]emedial action" it has taken—do not favor enhancement. Even accepting Plaintiffs' position that Defendant's

---

[17] During litigation, the court faced numerous challenging decisions including during the *Markman* process and when ruling on a 35 U.S.C. § 101 issue. (D.I. 183); Tr. 763:22-764:19 (discussing claim construction). The case was also closed pending *inter partes* review proceedings and eventually re-opened on January 13, 2016. (D.I. 102).

misconduct began in March 2008,[18] when the '737 Patent expired (*see* Tr. 353:14-16), the record cannot be reasonably understood to show an uninterrupted 7-year period of un-remediated wrongs. In 1998, Plaintiffs approached Defendant with their patents and explained their glassmaking process. Tr. 775:8-24. Subsequently, according to Defendant, Plaintiffs threatened them with a patent infringement action. *Id.* Defendant explained that it did not infringe and did not need a license because it was using the same process well before Plaintiffs. (D.I. 257 at 11.) For 15-years, Plaintiffs did not make another infringement assertion and never disputed Defendant's contentions of non-liability prior to filing suit in 2014. *Id.*

Similarly, there is no evidence of a "motivation for harm" that would support enhancement. Plaintiffs rely on the rebuttal expert report of Defendant's damages expert, Mr. Schoettelkotte, to support their position. (D.I. 152 at 15.) The statement upon which Plaintiffs rely says that "no Ardagh customers or end users have indicated they would pay more for glass containers simply due to the presence of recycled glass within the containers, much less one with the accused unsorted mixed color cullet." *Id.* The statement further explains that there was no evidence that "any such success or popularity is based on the allegedly infringing manufacturing process." *Id.* This is not enough. "[T]he fact that the infringer acted pursuant to a financial motive does not distinguish this case from the garden-variety infringement case." *Idenix Pharms.*, 271 F. Supp. 3d 694, 702 (citing *Sprint Communications Co., L.P. v. Time Warner Cable, Inc.*, 2017 WL 978107 at *14 (D. Kan. Mar. 14, 2017)).

The court next considers evidence concerning any attempted concealment by Defendant of its misconduct. The jury heard evidence that in 2005 Defendant's lawyer sent Plaintiffs a letter to

---

[18] Interestingly, Defendant took the position that the first infringement occurred when the patent issued in the middle of 1998. Tr. 1173:9-21.

make clear they had no intentions of using the technology found in the patents. Tr. 325:21-326:22. The jury also learned from Green Mountain's president that this is why Plaintiffs did not seek redress earlier. Tr. 325:21-326:22. The jury also heard evidence that the parties had discussed the '737 Patent over the course of some 13 years. Tr. 330:1-14. Defendant, however, maintains that it did not conceal their process, thus, concealment cannot be a basis to enhance Plaintiffs' damages. (D.I. 257 at 12.) Given the history between these parties, the court believes that if this factor weighs in favor of an enhanced award, it is only ever so slightly.

Having assessed and weighing each of the *Read* Factors, the court concludes that an award of enhanced damages is not warranted. Only three factors favorite enhancement: deliberate copying, investigation and good faith belief, and attempts to conceal misconduct. Most of the other factors—a good faith belief in non-infringement, behavior in the litigation, the duration of misconduct and remedial actions taken by Defendant, and the lack of a motivation to harm Plaintiffs—disfavor enhancement. The remaining factors, Defendant's size and financial condition, and the closeness of the case are essentially neutral. In sum, the *Read* Factors demonstrate that the court should exercise its discretion to deny Plaintiffs' request for enhanced damages.

### 3. Attorney's Fees

Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In 2014, the Supreme Court commented on § 285 and loosened the preexisting standard for what makes a case "exceptional" in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.* 134 S. Ct. 1749 (2014). The Supreme Court has held that an "exceptional" case is "one that stands out from others with respect to the substantive strength

of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756, 188 L.Ed.2d 816 (2014); *see also Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (2005) (discussing the previous standard). Ultimately, the court must make a discretionary decision based on the totality of circumstances. *See id.* Hence, § 285 allows district courts to exercise their discretion in determining, on a case-by-case basis and "considering the totality of the circumstances," whether a case qualifies as "exceptional." *Id.* The Supreme Court also rejected application of the clear and convincing standard, requiring that a party moving for attorney fees must demonstrate, by a preponderance of the evidence, that a case is "exceptional." *Octane Fitness*, 134 S. Ct. at 1758.

The parties do not dispute that Plaintiffs are the prevailing party as required by § 285. The award of attorneys' fees therefore turns on whether this case is exceptional. In light of the totality of the circumstances, the court finds that it is not exceptional. *Octane Fitness, LLC*, 134 S. Ct. at 1756. For the reasons described in connection with the court's decision on enhancement of damages, this case does not "stand out from others" with respect to the "substantive strength" of Plaintiffs' position, nor the substantive weakness of Defendant's. Instead, both sides' positions had substantial merit, and this was a case that, quite understandably, went to trial—a trial at which either side could have prevailed. Nor does this case "stand out from others" with respect to "the unreasonable manner" in which it was litigated. While the case has been hotly contested, and has been marked by a tremendous number of disputes, these are typical realities of high-stakes patent litigation between competitors in a market presenting an opportunity for enormous profits. For the most part, both sides defended their respective positions throughout

27

this litigation in apparent good faith.

The court, therefore, finds that no party is entitled to an award for attorneys' fees and costs in this case.

## V. CONCLUSION

For the reasons stated above, the court will deny all of Defendant's post-trial motions and Plaintiffs' motions for enhanced damages, attorney's fees, and a new trial and grant Plaintiffs' motion for prejudgment interest.

Dated: March ⅋, 2018

UNITED STATES DISTRICT JUDGE